[Cite as *State v. Conley*, 2016-Ohio-5310.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27869 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| PATRICK CONLEY | STOW MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. 2014CRB03864 |

DECISION AND JOURNAL ENTRY

Dated: August 10, 2016

SCHAFER, Judge.

{¶1} Defendant-Appellant, Patrick Conley, appeals the judgment of the Stow Municipal Court convicting him of voyeurism, classifying him as a Tier I sex offender, and ordering him to comply with the various registration duties applicable to that classification. For the reasons that follow, we affirm.

I.

{¶2} Conley was charged with one count of voyeurism in violation of R.C. 2907.08(A), a third-degree misdemeanor. This charge arose from Conley secretly recording people who used the unisex bathroom at his place of work. During the pendency of the case, Conley requested that the Adam Walsh Act, R.C. Chapter 2950 (the "Act"), be declared unconstitutional as it applies to him. The trial court rejected Conley's constitutionality arguments and he entered a no-contest plea. The trial court accepted his plea and entered a finding of guilt. It subsequently imposed a 30-day jail term with 15 days suspended and 15 days to be served on house arrest as

well as six months of community control.[1]  The trial court also classified Conley as a Tier I sex offender, meaning that he has to register once a year for the next 15 years.

{¶3}    Conley filed this timely appeal, which presents three assignments of error for our review.

## II.

### Assignment of Error I

**The Adam Walsh Act, as applied to Patrick Conley, violates the Eighth Amendment prohibition against cruel and unusual punishment and constitutes a Bill of Attainder.**

{¶4}    The language of Conley's first assignment of error suggests that he challenges his Tier I sex offender classification both as an unconstitutional Bill of Attainder and as cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. However, Conley does not develop his Bill of Attainder argument in the body of his brief, so we decline to fashion one on his behalf and address it.  *See* App.R. 16(A)(7).  Consequently, we limit our discussion to Conley's cruel and unusual punishment argument and we must reject it.

### A. Presumption of Constitutionality and As-Applied Challenges

{¶5}    The statutes enacted by the General Assembly are entitled to a "strong presumption of constitutionality."  *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, ¶ 7. As a result, "if at all possible, statutes must be construed in conformity with the Ohio and United States Constitutions."  *State v. Collier*, 62 Ohio St.3d 267, 269 (1991).  In line with the presumption of constitutionality, a court is only empowered to declare a statute unconstitutional if it "'appear[s] beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.'"  *State v. Cook*, 83 Ohio St.3d 404, 409 (1998), quoting *State ex rel.*

---

[1] The trial court stayed Conley's sentence, pending the resolution of this appeal.

*Dickman v. Defenbacher*, 164 Ohio St. 142 (1955), paragraph one of the syllabus. When considering whether a statute passes constitutional muster, we are mindful that the General Assembly is "the ultimate arbiter of public policy," *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, ¶ 21, and that we have "'nothing to do with the policy or wisdom of a statute[, which] is the exclusive concern of the legislative branch[,]'" *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 457 (1999), quoting *State ex rel. Bishop v. Mt. Orab School Dist. Bd. of Edn.*, 139 Ohio St. 427, 438 (1942).

{¶6} "A statute may be challenged as unconstitutional on the basis that it is invalid on its face or as applied to a particular set of facts." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 17. Since Conley has brought an as applied challenge in this matter, he is "'contend[ing] that application of the statute in the particular context in which he has acted * * * [is] unconstitutional.'" *Id.*, quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011, 1011 (1992) (Scalia, J., dissenting). Such a "challenge focuses on the particular application of the statute." *State v. Carrick*, 131 Ohio St.3d 340, 2012-Ohio-608, ¶ 16.

## B. The Eighth Amendment

{¶7} Preliminarily, we must address whether Conley's registration requirements are subject to Eighth Amendment scrutiny. A sanction is only subject to such scrutiny if it is punitive, as opposed to remedial. *See Austin v. United States*, 509 U.S. 602, 609 (1993) ("The purpose of the Eighth Amendment * * * was to limit the government's power to punish. The Cruel and Unusual Punishments Clause is self-evidently concerned with punishment."). The State, relying on dicta in *United States v. Kebodeaux*, 133 S.Ct. 2496 (2013), about the civil nature of the federal sex offender registry, argues that the Act's registration requirements are

remedial and not subject to Eighth Amendment scrutiny. While many courts have adopted this view of sex offender registration requirements, *see State v. Blankenship*, Slip Opinion No. 2015-Ohio-4624, ¶ 42 (O'Donnell and Kennedy, JJ., concurring in judgment only) (noting that "every federal circuit court to consider the issue has recognized that the federal sex offender registration scheme which Ohio adopted does not impose additional criminal punishment on sex offenders"), we are bound to apply the Ohio Supreme Court's determination that the Act's registration requirements are punitive, *see State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, ¶ 16 ("Following the enactment of [the Act], all doubt has been removed. R.C. Chapter 2950 is punitive."); *see also State v. Dickens*, 9th Dist. Lorain No. 07CA009218, 2008-Ohio-4404, ¶ 25 ("An appellate court has no authority to overrule decisions of the Ohio Supreme Court but is bound to follow them."). It is especially clear that we are bound to view the Act's registration requirements as punitive based on the Court's recent reaffirmation of that principle in *Blankenship*, where a plurality of the Court stated as follows: "We have established that the enhanced sex-offender reporting and notification requirements enacted by S.B. 10 are punitive in nature, and violate the Eight Amendment when applied to certain juveniles." *Blankenship* at ¶ 33 (plurality opinion).

{¶8} Having determined that Conley's Eighth Amendment claim is cognizable, we turn to the controlling standard for such claims.[2] The Eighth Amendment to the United States Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor

---

[2] Although the Ohio Constitution contains a prohibition of cruel and unusual punishment in Article I, Section 9 that "provides unique protection for Ohioans," *Blankenship* at ¶ 31, Conley has not raised a claim based on the Ohio Constitution's prohibition. Accordingly, we limit our discussion to the protection provided by the United States Constitution.

cruel and unusual punishments inflicted." This prohibition applies against the States via the Fourth Amendment. *State v. Hairston*, 118 Ohio St.3d 1073, 2008-Ohio-2338, ¶ 12, citing *Robinson v. California*, 370 U.S. 660 (1962). "[T]he bulk of Eighth Amendment jurisprudence concerns not whether a particular punishment constitutes torture, but whether it is disproportionate to the crime. The central precept is that 'punishment for crime should be graduated and proportioned to [the] offense.'" *Blankenship* at ¶ 17, quoting *Weems v. United States*, 217 U.S. 349, 367 (1910). The Supreme Court of Ohio has "recognized that cases involving cruel and unusual punishments are rare, 'limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person.'" *Id*. at ¶ 32, quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70 (1964); *see also State v. Chaffin*, 30 Ohio St.2d 13 (1972), paragraph three of the syllabus ("A punishment does not violate the constitutional prohibition against cruel and unusual punishments, if it not be so greatly disproportionate to the offense as to shock the sense of justice of the community.").

{¶9} When considering Conley's Eighth Amendment claim, we must engage in a two-step analysis:

> The Court first considers objective indicia of society's standards, as expressed in legislative enactments and state practice to determine whether there is a national consensus against the sentencing practice at issue. Next, guided by the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eight Amendment's text, history, meaning, and purpose, the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution.

(Internal quotations omitted.) *Graham v. Florida*, 560 U.S. 48, 61 (2010). Conley has not questioned the existence of a national consensus regarding sex offender registration requirements, which the Ohio Supreme Court has previously recognized. *See State v. Cook*, 83 Ohio St.3d 404, 406 (1998) (noting that all 50 states have a sex offender registration law and that

Ohio has had one in place since 1963). As a result, our analysis focuses on the second step of the *Graham* test. "With regard to the second step, a review undertaken in our own independent judgment, there are three considerations: (1) the culpability of the offender in light of his crime and characteristics; (2) the severity of the punishment in question; and (3) the penological justification." *Blankenship* at ¶ 22, citing *Graham* at 67.

### C. Conley's Tier I Classification Is Not Cruel and Unusual Punishment

{¶10} To guide our consideration of these items, the State points us to *Blankenship*, where the Supreme Court of Ohio addressed whether it was cruel and unusual punishment to require that a defendant convicted of unlawful sexual contact with a minor, a fourth-degree felony, register as a Tier II sex offender for a period of 25 years. A majority of the Court concluded that the defendant's Tier II sex offender classification was not cruel and unusual punishment, but no reasoning carried the day with a plurality of the justices applying the test outlined in *Graham* and two justices concluding that sex offender registration requirements are not subject to Eighth Amendment scrutiny. In applying the *Graham* test, the plurality explained that the defendant, a 21-year-old, was "more culpable and more deserving of punishment" for his sexual relations with a 15-year-old, where he was aware of her age and continued to contact her in violation of a court order. *Blankenship*, 2015-Ohio-4624, at ¶ 24. It also concluded that his jail term of 12 days and 25-year registration period were not severe punishments. *Id*. at ¶ 25-27. On this point, the plurality noted that "[o]ur research reveals no case in which similar registration and verification requirements have been held to be cruel and unusual punishment." *Id*. at ¶ 27. And, finally, the plurality stated that "the penological grounds for imposing [sex offender registration requirements] are still accepted in many quarters and are justified in part upon the perceived high rate of recidivism and resistance to treatment among sex offenders." *Id*. at ¶ 30.

{¶11} Although *Blankenship*'s holding is limited to the registration requirements for Tier II sex offenders, *see id*. at ¶ 38, we believe that the plurality's reasoning is illuminative to our resolution of Conley's Eighth Amendment claim against the registration requirements for Tier I sex offenders.[3] And, applying *Blankenship*'s reasoning here, we likewise conclude that Conley has failed to show that his Tier I sex offender registration requirements constitute cruel and unusual punishment.

{¶12} Conley was convicted of voyeurism after setting up an electronic device in the bathroom at his place of work for the purpose of recording a 20-year-old co-worker while she used the toilet. The victim, who had known Conley since she was a young child, told the trial court that this event harmed her emotionally and that she believed Conley deserved the maximum punishment that he could receive. From this record, we conclude, like the Court in *Blankenship*, that Conley is "more culpable and more deserving of punishment." *Id*. at ¶ 24.

{¶13} As to the severity of Conley's punishment, we note that his 15-year registration period is much shorter than the 25-year registration period imposed in *Blankenship*. *Id*. at ¶ 4. Nevertheless, the Court determined that the 25-year registration requirement implicated in that matter "do[es] not meet the high burden of being so extreme as to be grossly disproportionate to the crime or shocking to a reasonable person." *Id*. at ¶ 38. Since the Court in *Blankenship* determined that a registration period that is nearly twice as long as the one imposed here is

---

[3] There is limited case law on the interplay between the Eighth Amendment and sex offender registration requirements from the federal courts or other state courts because many jurisdictions have concluded that such requirements are not subject to Eighth Amendment scrutiny. *E.g. People in Interest of J.O.*, __ P.3d __, 2015-COA-119, ¶ 24 (Colo.App.) ("Most jurisdictions to have addressed this issue continue to hold that sex offender registration for a juvenile is not punitive."); *In re Alva*, 33 Cal.4th 254, 262 (2004) ("[W]e conclude that California's law requiring the mere *registration* of convicted sex offenders is not a punitive measure subject to either state of federal proscriptions against punishment that is 'cruel' and/or 'unusual.'").

permissible under the Eighth Amendment, we can discern no reason to conclude that Conley's 15-year registration period is so severe as to reach the level of unconstitutionality. *See Rummel v. Estelle*, 445 U.S. 263, 272 (1980) (noting that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare."); *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69 (1964) ("As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment.").

{¶14} And, finally, the Court's discussion in *Blankenship* regarding the Act's registration requirements and their penological aim applies with equal force here. While there may be scholarly debate regarding the propriety of sex offender registration requirements, *see Blankenship*, 2015-Ohio-4624, at ¶ 29 (collecting scholarly articles criticizing sex offender registration schemes), it is still true that those requirements are widely accepted both in Ohio and across the country, *id*. at ¶ 63 (O'Donnell and Kennedy, JJ., concurring in judgment only) (noting that the Act was adopted as part of "a national, uniform system of sex offender registration and notification"). Consequently, a review of the record reveals that Conley was culpable for his actions, that the trial court gave him a non-severe jail term and registration period, and that the registration period satisfied the penological aim of reducing recidivism among sex offenders. In light of this, we conclude that Conley has failed to carry his burden of showing that his Tier I sex offender classification constitutes cruel and unusual punishment.

{¶15} Accordingly, we overrule Conley's first assignment of error.

**Assignment of Error II**

**The Adam Walsh Act, as applied to Patrick Conley, violates the Due Process Clause of the United States Constitution and Section 16, Article I of the Ohio Constitution.**

{¶16} In his second assignment of error, Conley contends that the Act, as it applies to him, violates the due process clauses contained in the United States Constitution and Ohio Constitution. We disagree.

## A. Due Process

{¶17} The Fourteenth Amendment to the United States Constitution prohibits depriving "any person of life, liberty, or property, without due process of law[.]" Article I, Section 16 of the Ohio Constitution similarly provides that "every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due process of law[.]" Despite these provisions' different wordings, the Ohio Supreme Court has determined that they afford "equivalent" protections. *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544 (1941). The Due Process Clause has both a procedural and a substantive component. *See Washington v. Glucksberg*, 521 U.S. 702, 719 ("The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint."). Conley has raised due process challenges under both of these components and we consider each in turn.

## B. The Act Does Not Violate Procedural Due Process

{¶18} The procedural component of due process is "flexible and varies depending on the importance attached to the interest and the particular circumstances under which the deprivation may occur." *State v. Hochhausler*, 76 Ohio St.3d 455, 459 (1996); *see also Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961) ("[U]nlike some legal rules, * * * [due process] is not a technical conception with a fixed content unrelated to time, place, and circumstances."). Despite the flexibility of the concept, it does "demand[] that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner where the state seeks to infringe a protected liberty or property interest." *Hochhausler* at 459. "To trigger protections

under these clauses, a sexual offender must show that he was deprived of a protected liberty or property interest as a result of the registration requirement." *State v. Hayden*, 96 Ohio St.3d 211, 2002-Ohio-4169, ¶ 6.

{¶19} Conley's procedural due process argument focuses on two items. First, he argues that he was denied procedural due process because the trial court did not hold a hearing regarding his classification. Second, Conley asserts that he was denied procedural due process because the provisions for 15-year registration period for Tier I sex offenders and the possible 18-month sentence for a failure to register are inconsistent with the 60-day maximum jail term for his voyeurism conviction. Neither of these items supports a determination that Conley was denied procedural due process.

{¶20} In *Hayden*, the Supreme Court of Ohio considered a procedural due process challenge to the Act's precursor, Megan's Law. The Court rejected the challenge, stating that "[n]either the Due Process Clause of the Fourteenth Amendment to the United States Constitution nor the analogous clause in Ohio's Constitution, Section 16, Article I, requires a hearing[.]" *Id*. at ¶ 13. This holding has been applied with equal force to procedural due process challenges to the Act. *E.g.*, *State v. Moore*, 2d Dist. Darke No. 2014-CA-13, 2015-Ohio-551, ¶ 10 ("We find the case before us to be indistinguishable from the holding in *Hayden*."); *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 52 ("[W]e note that Hudson was not entitled to a hearing to challenge his *initial* duty to register as a sexually oriented offender since that duty attached as a matter of law."). Conley has failed to provide any authority that would allow us to look past *Hayden*'s mandate. *See* App.R. 16(A)(7). As a result, we must apply that precedent and reject Conley's argument on this point. *See State v. Bruce*, 170 Ohio App.3d 92,

2007-Ohio-175, ¶ 6 (1st Dist.) (stating that the Court of Appeals was "bound" to follow Supreme Court's precedent and could not overrule or modify that precedent).

**{¶21}** We also reject Conley's procedural due process argument regarding the inconsistency among the maximum jail term for his voyeurism conviction and his 15-year registration period and 18-month maximum prison term for a failure to register violation. We are unable to see how this inconsistency implicates a violation of procedural due process. Conley's 15-year registration period was produced as a matter of law by virtue of his voyeurism conviction. *See* R.C. 2950.01(E)(1)(a) (stating that a person convicted under R.C. 2907.08 is a Tier I sex offender); R.C. 2950.07(B)(3) (providing for 15-year registration period for Tier I sex offenders); *Hudson* at ¶ 52 (stating that classification and registration requirements "attached as a matter of law"). The 18-month maximum prison term for a potential failure to register was also created solely by virtue of his third-degree-misdemeanor voyeurism conviction and subsequent Tier I classification. *See* R.C. 2950.99(A)(1)(a)(iii) (stating that a failure to register conviction where the underlying conviction was a fifth-degree felony or misdemeanor constitutes a fourth-degree felony). Since there was no procedural due process violation in Conley's classification as a Tier I sex offender without a hearing, there can be no such violation that results from any purported inconsistency coming from that classification. Consequently, we reject Conley's procedural due process arguments.

### C. Conley Lacks Standing to Bring a Substantive Due Process Challenge

**{¶22}** We now turn to Conley's substantive due process arguments. The concept of substantive due process refers to the special protection granted to "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were

sacrificed." (Internal quotations omitted.) *Glucksberg*, 521 U.S. at 720-721. Conley argues that his Tier I classification and its resultant restriction that he not live within 1,000 feet of a school, preschool, or day-care facility, *see* R.C. 2950.034(A), infringes upon his substantive due process rights because they preclude him from establishing a residence of his choosing. We are unable to reach the merits of Conley's argument because he lacks standing to assert it.

{¶23} Article IV, Section 4(B) of the Ohio Constitution only vests courts with jurisdiction "over all *justiciable* matters." (Emphasis added.) "A matter is justiciable only if the complaining party has standing to sue." *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 11, citing *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶ 41; *see also State ex rel. Suster*, 84 Ohio St.3d 70, 77 (1998) ("Standing is a threshold question for the court to decide in order for it to adjudicate the action."). The Supreme Court of Ohio has previously determined that "[t]he constitutionality of a state statute may not be brought into question by one who is not within the class against whom the operation of the statute is alleged to have been unconstitutionally applied and who has not been injured by its alleged unconstitutional provision." *Palazzi v. Estate of Gardner*, 32 Ohio St.3d 169 (1987), syllabus. Further, "a hypothetical or potential injury will not give a person standing to challenge the constitutionality of a statute." (Internal quotation omitted.) *Brooks v. State*, 9th Dist. Lorain No. 08CA9452, 2009-Ohio-1825, ¶ 11. Based on these rules, Ohio courts have consistently determined that unless a classified sex offender presents evidence that he has been deprived of property rights due to the Act's residency requirements, he lacks standing to assert a substantive due process challenge to those requirements. *E.g.*, *State v. Hall*, 2d Dist. Montgomery No. 22969, 2009-Ohio-3020, ¶ 17; *State v. Pierce*, 8th Dist. Cuyahoga No. 88470, 2007-Ohio-3665, ¶ 33.

{¶24} Here, Conley has not offered any evidence showing that he has been deprived of his right to live where he chooses. There is no indication that he lives in a residence that is within 1,000 feet of a school, preschool, or daycare. There is also no indication that Conley intends to move to a residence within such an area. Consequently, the record does not reflect that he has suffered an injury that would give him standing to bring a substantive due process challenge to the Act's residency requirements. In light of the foregoing, we reject Conley's substantive due process challenge.

{¶25} Conley has failed to establish that the Act, as it applies to him, violates procedural due process. He has also failed to establish standing for his substantive due process claim. Accordingly, we overrule Conley's second assignment of error.

### Assignment of Error III

**The Adam Walsh Act, as applied to Patrick Conley, violates the Equal Protection Clauses of the United States and Ohio Constitutions.**

{¶26} In his third assignment of error, Conley asserts that the Act, as it applies to him, violates his right to the equal protection of the laws. We disagree.

### A. Equal Protection

{¶27} The Fourteenth Amendment to the United States Constitution relevantly provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." The Ohio Constitution provides a similar protection in Article I, Section 2: "All political power is inherent in the people. Government is instituted for their equal protection and benefit." The federal and Ohio equal protection clauses are "functionally equivalent," *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, ¶ 38, and "are to be construed and analyzed identically," *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 60 (1999). The import of these provisions is not that they categorically forbid classifications.

14

*Burnett v. Motorists Mut. Ins. Co.*, 118 Ohio St.3d 493, 2008-Ohio-2751, ¶ 30.  Rather, they "'simply keep[] governmental decisionmakers from treating differently persons who are in all relevant respects alike.'"  *Id.*, quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).

**{¶28}**  When assessing an equal protection challenge, a court must "apply varying levels of scrutiny * * * depending on the rights at issue and the purportedly discriminatory classifications created by law."  *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, ¶ 18.  If the challenged statute does not implicate a suspect classification, then the court applies rational basis review.  *State v. Klembus*, 146 Ohio St.3d 84, 2016-Ohio-1092, ¶ 9.  The parties in this matter both agree that rational basis review applies here.  Under this test, the challenged statute "does not violate equal-protection principles if it is rationally related to a legitimate government interest."  *Williams* at ¶ 39, citing *Eppley v. Tri-Valley Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 56, 2009-Ohio-1970, ¶ 15.  To properly resolve this question, we must engage in a two-step analysis.  "We must first identify a valid state interest.  Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational."  *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, ¶ 9, citing *Buchman v. Wayne Trace Local School Dist. Bd. of Edn.*, 73 Ohio St.3d 260, 267 (1995).  In addition to the deference that comes from the presumption of constitutionality, "we are to grant substantial deference to the predictive judgment of the General Assembly" when applying rational basis review.  *State v. Williams*, 88 Ohio St.3d 513, 531 (2000).  And, we must be mindful that "[o]ur equal protection review does not require us to conclude that the state has chosen the best means of serving a legitimate interest, only that is has chosen a rational one."  *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 354 (1994).

## B. The Act Serves a Valid State Interest

{¶29} As the challenger of the Act, Conley "must negative every conceivable basis before an equal protection challenge will be upheld." *Williams* at 531. Conley has failed to carry this burden as it relates to the first step of our analysis. The Act includes several of the General Assembly's findings before enacting it, including that "protection of members of the public from sex offenders and child-victim offenders is a paramount governmental interest." R.C. 2950.02(A)(2). Conley has not argued that this is an invalid state interest, nor has any court concluded that it is invalid. *See, e.g.*, *State v. Moore*, 2d Dist. Darke No. 2014-CA-13, 2015-Ohio-551, ¶ 18 ("We have held that: 'the legislature's stated purpose in imposing the registration and notification requirements was to protect the safety and general welfare of the people. * * * [T]his is a legitimate governmental objective.'"), quoting *State v. Lewis*, 2d Dist. Greene No. 97 CA 134, 1998 WL 771399, *3 (Oct. 2, 1998). Having determined that the Act advances a valid state interest, we move to the Act's relationship to that end.

## C. The Act is Rationally Related to a Valid State Interest

{¶30} Conley also fails to carry his burden to show that the Act is not rationally related to the valid state interest of protecting the public. In attempting to carry his burden, Conley points out two aspects of the Act's interplay with other provisions of the Revised Code as purportedly reflecting its irrationality: (1) he is able to expunge his voyeurism conviction after one year under R.C. 2953.32(A)(1), 2953.36(E); and (2) he is subject to a maximum 18-month prison term if he fails to register, which is far greater than the 60-day maximum jail term he could receive for his conviction in this matter. Neither of these factors indicates irrationality.

{¶31} The availability of an expungement to Conley after one year does not render the Act irrationally related to the aim of protecting the public from sex offenders. Conley's

argument on this point does not vary the General Assembly's findings regarding the recidivism of sex offenders and the public's need to receive adequate notice and information about them. *See* R.C. 2950.02(A)(1), (2). And, we note that while Conley may request an expungement for his voyeurism conviction, such an expungement is not mandated and is left to the trial court's discretion based upon its consideration of several factors. *See* R.C. 2953.32(C). Consequently, we decline to seize upon the possibility of an expungement to conclude that the Act is irrationally related to the state interest of protecting the public.

**{¶32}** We likewise reject Conley's argument about the relationship of the potential penalty for a failure to register and the possible sentence he could receive for his voyeurism conviction. If a defendant convicted of a misdemeanor fails to register as required, he commits a new criminal offense that is a felony of the fourth degree. *See* R.C. 2950.99(A)(1)(a)(iii). Thus, when a defendant is found guilty of failing to register, a court does not sentence him again for his underlying conviction but rather for the new misconduct of failing to register. *See State v. Lloyd*, 132 Ohio St.3d 135, 2012-Ohio-2015, ¶ 42 ("[T]he penalty provision [of R.C. 2950.99] builds upon the registration provisions."). *Compare State v. Beverly*, 4th Dist. Ross No. 01CA2603, 2002 WL 59643, *3 (Jan. 11, 2002) ("Thus, when the defendant violates community control, the court imposes an appropriate sanction for that misconduct, but not for the original or underlying crime."). Additionally, "[w]hen a person commits a failure to register offense, he exhibits recidivist behavior given that (1) he already has a prior offense that triggered the registration requirements, and (2) the failure to register offense stems from a person's inability to follow the law and adhere to the registration requirements imposed upon him." *State v. Richey*, 10th Dist. Franklin No. 09AP-36, 2009-Ohio-4487, ¶ 20. In light of the inherently recidivist nature of a failure to register violation, we cannot conclude that the General Assembly was irrational in

making such a violation a fourth-degree felony as opposed to requiring that the violation match the degree of the underlying conviction, as suggested by Conley. *See* R.C. 2950.02(A)(2) (stating that "[s]ex offenders and child-victim offenders pose a risk of engaging in further sexually abusive behavior even after being released from imprisonment, a prison term, or other confinement or detention"). *Compare* R.C. 2919.25(D)(3)-(4) (providing that defendant with previous domestic violence convictions faces a higher-degree offense for later domestic violence convictions).

**{¶33}** In sum, the Act is rationally related to the valid state interest of protecting the public from sex offenders. Accordingly, we overrule Conley's third assignment of error.

III.

**{¶34}** Having overruled Conley's three assignments of error, we affirm the judgment of the Stow Municipal Court.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶35} I concur in judgment only in regard to the second assignment of error. With respect to the first and third assignments of error, Conley acknowledged in his brief that these two issues were before the Supreme Court of Ohio in *State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624. I concur based on Conley's acknowledgement that *Blankenship* is controlling.

APPEARANCES:

SARAH. M. SCHREGARDUS, Attorney at Law, for Appellant.

NICOLE WELSH, Attorney at Law, for Appellee.