Lanzinger, J.
{¶ 1} Appellant, Travis Blankenship, challenges as cruel and unusual punishment the sex-offender-registration and address-verification requirements imposed upon him as part of his sentence for violating R.C. 2907.04 by engaging in unlawful sexual conduct with M.H., a 15-year-old, when he was 21. Because we hold that the Tier II registration requirements imposed upon him are not so extreme as to be grossly disproportionate to the crime or shocking to a reasonable person and to the community’s sense of justice, we affirm the judgment of the court of appeals.
I. Background
{¶ 2} In 2011, Blankenship began communicating with M.H. through a social media site called PhoneZoo.com. During an online conversation he told M.H. that he was 21, and she informed him that she was 15. After meeting in person, they began a sexual relationship and had intercourse on two different dates. M.H. reported that it was consensual each time.
{¶ 3} A bill of information charged Blankenship with one count of unlawful sexual conduct with a minor who was over 13 but less than 16 years of age, a violation of R.C. 2907.04, a fourth-degree felony. Blankenship pled guilty and was evaluated by a psychologist as part of the presentence investigation ordered by the court. The psychologist characterized Blankenship as showing none of the characteristics of what he considers a sex offender despite his commission of a sex offense and concluded that Blankenship’s risk of reoffending was low. Yet while the presentence investigation was pending, Blankenship contacted the victim and lied to the psychologist about it. As a result, the court postponed sentencing and ordered a reevaluation. After the new evaluation, the psychologist’s opinion and recommendations remained the same.
{¶ 4} The trial court then sentenced Blankenship to five years of community control with conditions, including a six-month jail sentence, which was suspended after Blankenship served 12 days. Blankenship was also designated a Tier II sex offender/child-victim offender, R.C. 2950.01(F)(1)(b), and pursuant to R.C. 2950.04(A)(2) was required to register in person with the sheriff of the county where he establishes residency within three days of coming into that county, as well as with the sheriff of the county in which he attends school or in which he is employed immediately upon coming into that county. He is also required to *223 verify his residence address, place of employment, and place of education in person every 180 days for 25 years. R.C. 2950.06(B)(2) and 2950.07(B)(2).
{¶ 5} On appeal, Blankenship argued that these Tier II sex-offender requirements imposed upon him violated the prohibition of the Eighth Amendment to the United States Constitution against cruel and unusual punishment. Blankenship stressed the psychologist’s opinion to support the contention that he was not a sex offender. He argued that his relationship with M.H. was “caring” and that the circumstances showed no aggravating facts. He contended that a 25-year registration period would serve no legitimate penological purpose in his case.
{¶ 6} The Second District, in a two-to-one decision, affirmed the judgment of the trial court and concluded that Blankenship’s sentence did not violate the Eighth Amendment.
{¶ 7} Blankenship appealed to this court, and we accepted jurisdiction on his sole proposition of law: “Mandatory sex offender classifications under Senate Bill 10 constitute cruel and unusual punishment where the classification is grossly disproportionate to the nature of the offense and character of the offender.” 139 Ohio St.3d 1404, 2014-Ohio-2245, 9 N.E.3d 1062.
{¶ 8} Although the proposition of law refers only to the mandatory sex-offender classification, Blankenship’s brief also contains numerous references to the registration requirements. Indeed, it would be difficult to discuss the impact of being classified as a sex offender without referring to those mandatory requirements. We therefore will address both classification and registration in our discussion.
II. Analysis
{¶ 9} We have already set forth the history of Ohio’s sex-offender-registration legislation in State v. Bodyke, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 3-28. While classification and registration schemes vary across states, most states addressing Eighth Amendment challenges to mandatory sex-offender classification for adults have dismissed those challenges based on their findings that the registration schemes are remedial rather than punitive.[1] We, however, *224 have held that the enhanced sex-offender reporting and notification requirements contained in R.C. Chapter 2950 enacted by Am.Sub.S.B. No. 10 (“S.B. 10”) are punitive in nature: “Following the enactment of S.B. 10, all doubt has been removed: R.C. Chapter 2950 is punitive.” State v. Williams, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16. In addition, we also have held unconstitutional the prospective, automatic application of those reporting and notification requirements to certain juvenile offenders. In re C.P., 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729.
{¶ 10} Blankenship, although not a juvenile, claims that his classification and requirement to register as a sex offender violate the Eighth Amendment’s prohibition against cruel and unusual punishment. He relies heavily on his psychologist’s opinion that he is not a sex offender. But this reliance is misplaced because the state statutory scheme provides for automatic consequences.
{¶ 11} Ohio’s current sex-offender-registration statutes create a three-tier classification system. Unlike the earlier “labeling” classification system under Megan’s Law, 146 Ohio Laws, Part II, 2560, in which a judge could consider the characteristics of an offender before sentencing, “tier” classification is based solely upon the offense for which a person is convicted and the judge has no discretion to modify the classification. Williams, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 20.
{¶ 12} Blankenship pled guilty to a violation of R.C. 2907.04, unlawful sexual conduct with a minor. Generally, a violation of R.C. 2907.04 is a fourth-degree felony; the statute prohibits sexual conduct between a person 18 or older and someone 13, 14, or 15 years old. R.C. 2907.04(A) and (B)(1). The offense is a third-degree felony if the age span is ten or more years, R.C. 2907.04(B)(3), and becomes a second-degree felony if the offender has certain prior offenses, R.C. 2907.04(B)(4). The offense is reduced to a misdemeanor of the first degree if the age span is less than four years. R.C. 2907.04(B)(2).
{¶ 13} For purposes of R.C. Chapter 2950, certain violations of R.C. 2907.04 qualify as “sexually oriented offenses.” R.C. 2950.01(A)(2) and (3). A “sex offender” is a person who is convicted of “any sexually oriented offense.” R.C. 2950.01(B)(1).
{¶ 14} A person convicted of violating R.C. 2907.04 is a Tier I sex offender if the offender was less than four years older than the victim, there was no consent, and the offender has not been convicted of or pled guilty to certain sex offenses. *225 R.C. 2950.01(E)(1)(b). But if the offender is at least four years older than the victim, or if the offender is less than four years older but has been convicted of or pled guilty to certain sex offenses, the classification is raised to that of Tier II sex offender. R.C. 2950.01(F)(1)(b).
{¶ 15} Blankenship was convicted of the fourth-degree-felony version of R.C. 2907.04 in this case because he was six years older than M.H., the person with whom he engaged in sexual conduct, and he did not have prior offenses. His Tier II classification requires him to register and verify his address semiannually for 25 years as specified by R.C. 2950.06(B)(2) and 2950.07(B)(2).
{¶ 16} Blankenship bases his claim of cruel and unusual punishment on both the Eighth Amendment to the United States Constitution and Article I, Section 9 of the Ohio Constitution. We will therefore examine his claim under both federal and state law.
A. Federal Law
{¶ 17} The Eighth Amendment to the United States Constitution states, “Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.” “The Amendment proscribes ‘all excessive punishments, as well as cruel and unusual punishments that may or may not be excessive.’ ” Kennedy v. Louisiana, 554 U.S. 407, 419, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008), quoting Atkins v. Virginia, 536 U.S. 304, 311, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), fn. 7. It is elementary that the Eighth Amendment prohibits torture. Wilkerson v. Utah, 99 U.S. 130, 136, 25 L.Ed. 345 (1878). But the bulk of Eighth Amendment jurisprudence concerns not whether a particular punishment constitutes torture, but whether it is disproportionate to the crime. The central precept is that “punishment for crime should be graduated and proportioned to [the] offense.” Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910).
{¶ 18} The United States Supreme Court has observed that its cases addressing proportionality fall into two categories. The first involves “challenges to the length of term-of-years sentences given all the circumstances in a particular case.” Graham v. Florida, 560 U.S. 48, 59, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). The second involves categorical restrictions that, until Graham, applied only in capital cases. The second approach traditionally involves “cases in which the Court implements the proportionality standard by certain categorical restrictions on the death penalty.” Id. These restrictions include a prohibition on the death penalty for nonhomicide crimes, for defendants who committed the crime before the age of 18, and for defendants with low mental functioning. See Kennedy v. Louisiana, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) (prohibiting death as a punishment for nonhomicide crimes); Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (prohibiting the death penalty *226 for defendants who committed crimes before turning 18); Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (prohibiting the death penalty for persons with low intellectual functioning).
{¶ 19} In Graham v. Florida, the court applied the categorical approach, as in Roper, Kennedy, and Atkins, and concluded that the Eighth Amendment prohibits the imposition of life without parole on a juvenile who did not commit homicide. But Blankenship does not fit into this categorical restriction — he was not a juvenile when he committed his sex offense. He does not identify, either in briefing or at oral argument, any other group into which he fits where a categorical rule has been established making requirements such as Tier II registration cruel and unusual. At best, Blankenship suggests that we adopt a categorical prohibition of Tier II registration for young adult offenders who are shown to present a low risk of recidivism, who have a consensual relationship with the victim, and whose psychological profile shows none of the features typical of sex offenders. For an Eighth Amendment analysis, we must determine whether a new categorical rule is constitutionally mandated.
{¶ 20} When considering Eighth Amendment challenges and whether to adopt a categorical rule, the United States Supreme Court engages in a two-step process:
The Court first considers “objective indicia of society’s standards, as expressed in legislative enactments and state practice” to determine whether there is a national consensus against the sentencing practice at issue. Roper, supra, at 563. Next, guided by “the standards elaborated by controlling precedents and by the Court’s own understanding and interpretation of the Eighth Amendment’s text, history, meaning, and purpose,” Kennedy, 554 U.S., at 421, the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution. Roper, supra, at 564.
Graham, 560 U.S. at 61, 130 S.Ct. 2011, 176 L.Ed.2d 825.
{¶ 21} In analyzing Blankenship’s challenge to the registration requirements imposed on him, we must bear in mind the overriding principle that “[t]he concept of proportionality is central to the Eighth Amendment.” Id. at 59. Thus, the goal of the two-step process described above is to determine whether Blankenship’s punishment is proportionate to his crimes.
{¶ 22} Because Blankenship concedes the lack of a national consensus against lengthy sex-offender registration for individuals like himself, we need not discuss the first step. With regard to the second step, a review undertaken in our own *227 independent judgment, there are three considerations: (1) the culpability of the offender in light of his crime and characteristics, (2) the severity of the punishment in question, and (3) the penological justification. Graham at 67. We now consider these three areas.

Culpability of the Offender

{¶ 23} The first consideration in the independent review is assessing the culpability of the offender. As a matter of law, Blankenship’s conviction for a sexually oriented offense makes him a sex offender. R.C. 2950.01(B)(1). Blankenship urges us to consider the analysis in In re C.P. regarding juveniles as equally applicable to young adult offenders like himself who do not have a criminal history and who pose no real threat to the community. But in C.P., we emphasized that Ohio’s system for juveniles assumes that “children are not as culpable for their acts as adults.” 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 39. We are not persuaded that this longstanding distinction between the culpability of juveniles and adults, even young adults, should be set aside in this case. Blankenship is an adult and thus In re C.P. does not apply to him.
{¶ 24} Blankenship was himself 21 when the relationship began, and he knew that M.H. was only 15; she told him so over the Internet. Despite his awareness of her age, he had intercourse with her twice. He also contacted her while his case was pending in direct violation of the court’s presentence order. These facts show Blankenship’s culpability in engaging in sexual conduct when the offender “knows the other person is thirteen years of age or older but less than sixteen years of age.” R.C. 2907.04(A). It is true that if M.H. had been only one year older, she would have been at the age of consent and there would have been no crime. But the legislature has chosen to draw the line at a difference of four years between the offender and the victim. Blankenship was six years older than M.H. and is therefore deemed more culpable and more deserving of punishment.

Severity of the Punishment

{¶ 25} The second consideration is the severity of the punishment. Blankenship, an adult, had a sexual relationship with a 15-year-old, fully aware of her age. He could have received 18 months in prison as a maximum sentence. R.C. 2929.14(A)(4) (fourth-degree felony). Instead, he was placed on community control and served 12 days of a six-month sentence. If M.H. had been three years younger, Blankenship would have faced an indefinite prison term of a minimum of ten years to a maximum term of life. R.C. 2907.02(B); 2971.03(B)(1)(a). These legislative gradations according to the victim’s age reflect society’s judgment that the culpability of the offender increases as the age of the victim decreases. There is no support in the law for Blankenship’s *228 contention that the maturity level of a “young adult” of 21 is similar to that of a juvenile and that his culpability should be reduced accordingly.
{¶ 26} In addition, we cannot say that the state has no interest in protecting minors who may otherwise “consent” to sexual activity. Consent plays no role and is not a viable defense in determining whether a person has violated R.C. 2907.04. A child under 16 is simply not legally capable of consent to sexual conduct with an adult.
{¶ 27} Tier II registration requirements associated with a conviction for unlawful sexual conduct with a minor are not so severe as to amount to cruel and unusual punishment under the federal Constitution. Blankenship’s obligation to register in person in any county where he establishes residency, goes to school, or takes a job and to verify his residence address, place of employment, and place of education in person every 180 days for 25 years is burdensome but does not reach that constitutional level. Our research reveals no case in which similar registration and verification requirements have been held to be cruel and unusual punishment. Blankenship has not persuaded us to extend the law in the manner he suggests.

Penological Justifications

{¶ 28} The final consideration in an Eighth Amendment analysis is to assess the penological justifications for the sentencing practice. Graham, 560 U.S. at 67, 130 S.Ct. 2011, 176 L.Ed.2d 825. The stated purpose of S.B. 10 and its registration and community-notification requirements is “to protect the safety and general welfare of the people of this state.” R.C. 2950.02(B).
{¶ 29} We acknowledge that sex-offender registration schemes have been criticized on the ground that they do not actually serve the intended purpose of community protection. See, e.g., McLeod, Regulating Sexual Harm: Strangers, Intimates, and Social Institutional Reform, 102 Calif.L.Rev. 1553, 1573-1580 (2014); Rodriguez, The Sex Offender Under the Bridge: Has Megan’s Law Run Amok?, 62 Rutgers L.Rev. 1023, 1052-1056 (2010); Yung, The Emerging Criminal War on Sex Offenders, 45 Harv.C.R.-C.L.L.Rev. 435, 453-459 (2010).
{¶ 30} Yet we also note that while registration provisions such as the one at issue have been criticized by some as unjustified, the penological grounds for imposing such requirements are still accepted in many quarters and are justified in part based upon the perceived high rate of recidivism and resistance to treatment among sex offenders. Proponents consider registration to be a more economical method of monitoring and preventing recidivism than the costly alternative of imprisonment. Wilkes, Sex Offender Registration and Community Notification Laws: Will These Laws Survive?, 37 U.Rich.L.Rev. 1245, 1251-1252 (2003). We cannot say that the requirements of semiannual address registration and verification are so unjustified as to constitute cruel and unusual punishment.
*229 B. Ohio Law
{¶ 31} The Ohio Constitution, Article I, Section 9, contains its own prohibition against cruel and unusual punishment. While it contains the same language as the United States Constitution (“[e]xcessive bail shall not be required, nor excessive fines imposed; nor cruel and unusual punishments inflicted”), it provides unique protection for Ohioans:
The Ohio Constitution is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall. As long as state courts provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups.
Arnold v. Cleveland, 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus. Thus, Article I, Section 9. of the Ohio Constitution provides protection independent of the protection provided by the Eighth Amendment.
{¶ 32} We have recognized that cases involving cruel and unusual punishments are rare, “limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person.” McDougle v. Maxwell, 1 Ohio St.2d 68, 70, 203 N.E.2d 334 (1964). As with the Eighth Amendment, lack of proportionality is a key factor: “A punishment does not violate the constitutional prohibition against cruel and unusual punishments, if it be not so greatly disproportionate to the offense as to shock the sense of justice of the community.” State v. Chaffin, 30 Ohio St.2d 13, 282 N.E.2d 46 (1972), paragraph three of the syllabus.
{¶ 33} Our review is focused on the portion of Blankenship’s sentence that imposes an obligation on him to comply with the registration and address-verification requirements for Tier II sex offenders. We have established that the enhanced sex-offender reporting and notification requirements enacted by S.B. 10 are punitive in nature, Williams, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16, and violate the Eighth Amendment when applied to certain juveniles, In re C.P., 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729. But we have not considered whether the punishment is cruel and unusual when applied to adults.
{¶ 34} Blankenship cites In re C.P., in which we were asked to address whether lifetime registration for a new class of juvenile sex-offender registrants constituted cruel and unusual punishment under the federal and state Constitutions. We examined each separately, and in holding that R.C. 2152.86 violated the Ohio Constitution, we stated:
*230 S.B. 10 forces registration and notification requirements into a juvenile system where rehabilitation is paramount, confidentiality is elemental, and individualized treatment from judges is essential. The public punishments required by R.C. 2152.86 are automatic, lifelong, and contrary to the rehabilitative goals of the juvenile system. We conclude that they “shock the sense of justice of the community” and thus violate Ohio’s prohibition against cruel and unusual punishments.
Id. at ¶ 69. While In re C.P. was pending, the First District Court of Appeals determined that the Tier II registration requirements associated with a conviction for unlawful sexual conduct with a minor did not amount to cruel and unusual punishment. State v. Bradley, 1st Dist. Hamilton No. C-100833, 2011-Ohio-6266, 2011 WL 6153624. As a point of comparison, the First District relied upon State v. Hairston, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, a case in which we upheld a prison sentence of 134 years against a claim of cruel and unusual punishment. After examining the facts in its own case, the First District concluded:
We cannot say that the requirement that Bradley register as a sexual offender for 25 years and verify his information every 180 days constitutes one of those rare cases where the punishment is so extreme as to be grossly disproportionate to the crime or that it is shocking to a reasonable person and to the community’s sense of justice.
Id. at ¶ 13.
{¶ 35} In similar fashion, Blankenship has not overcome the hurdle of showing that his punishment is cruel or unusual. The concerns that led us to conclude that the requirement of lifetime registration for certain juvenile offenders violated Ohio’s prohibition against cruel and unusual punishment in In re C.P. are largely absent when dealing with an adult who engaged in unlawful sexual conduct with a minor.
{¶ 36} We are also mindful that “reviewing courts should grant substantial deference to the broad authority that legislatures possess in determining the types and limits of punishments for crimes.” State v. Weitbrecht, 86 Ohio St.3d 68, 715 N.E.2d 167 (1999). The General Assembly has seen fit to impose registration sanctions in cases involving sex offenses to protect the public. Indeed, such sanctions now are the norm. People v. Temelkoski, 307 Mich.App. 241, 262, 859 N.W.2d 743 (2014) (“all 50 states and the federal government have *231 enacted some form of sex offender registration and notification provisions”). They cannot be said to be shocking to the sense of justice of the community.
{¶ 37} The stated legislative intent of the General Assembly in enacting S.B. 10 is to protect the public. While some may question whether the registration requirements are the best way to further public safety,[2] questions concerning the wisdom of legislation are for the legislature. “ ‘[WJhether the court agrees with it in that particular or not is of no consequence. * * * If the legislature has the constitutional power to enact a law, no matter whether the law be wise or otherwise it is no concern of the court.’ ” (Ellipsis sic.) Butler v. Jordan, 92 Ohio St.3d 354, 376, 750 N.E.2d 554 (2001), quoting State Bd. of Health v. Greenville, 86 Ohio St. 1, 20, 98 N.E. 1019 (1912). It is undisputed that the General Assembly is “ ‘the ultimate arbiter of public policy’ ” and the only branch of government charged with fulfilling that role. Arbino v. Johnson & Johnson, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 21, quoting State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21. Blankenship has not met his burden to show that Tier II sex-offender registration requirements are cruel and unusual punishment.
III. Conclusion
{¶ 38} We hold that the registration and address-verification requirements for Tier II offenders under R.C. Chapter 2950 do not constitute cruel and unusual punishment in violation of either the Eighth Amendment to the United States Constitution or Article I, Section 9 of the Ohio Constitution. The Tier II registration requirements do not meet the high burden of being so extreme as to be grossly disproportionate to the crime or shocking to a reasonable person. We therefore affirm the judgment of the court of appeals.
Judgment affirmed.
O’Connor, C.J., and French, J., concur.
O’Donnell and Kennedy, JJ., concur in judgment only.
Pfeifer and O’Neill, JJ., dissent.

. For cases holding that registration schemes are remedial rather than punitive, see, e.g., Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995); State v. Joslin, 145 Idaho 75, 175 P.3d 764 (2007); Meinders v. Weber, 2000 SD 2, 604 N.W.2d 248.
For eases resting on findings that registration requirements do not constitute punishment, see, e.g., Wiggins v. State, 288 Ga. 169, 702 S.E.2d 865 (2010); People v. Adams, 144 Ill.2d 381, 163 Ill.Dec. 483, 581 N.E.2d 637 (1991); State v. Lammie, 164 Ariz. 377, 793 P.2d 134 (App.1990); Patterson v. State, 985 P.2d 1007 (Alaska App.1999); In re Alva, 33 Cal.4th 254, 14 Cal.Rptr.3d 811, 92 P.3d 311 (2004).
*224 For a case finding that the registration requirements are punishment but do not constitute cruel and unusual punishment, see State v. Mossman, 294 Kan. 901, 281 P.3d 153 (2012).

. See, e.g., Miller, Let the Burden Fit the Crime: Extending Proportionality Review to Sex Offenders, 123 Yale L.J. 1607 (2014).