[Cite as *State v. Howard*, 2017-Ohio-8734.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105327**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMES E. HOWARD

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-605826-A

**BEFORE:** Stewart, J., Keough, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 30, 2017

**ATTORNEY FOR APPELLANT**

James R. Willis
James R. Willis Attorney At Law
1144 Rockefeller Building
614 West Superior Avenue
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Carson Strang
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, J.:

{¶1} While making a traffic stop involving defendant-appellant James E. Howard, the police detected an "overwhelming" odor of marijuana coming from his vehicle. A search of the vehicle uncovered a one-pound package of marijuana, four cell phones, a bottle of a powder (later identified as "Mannitol"), and $5,707 in currency. The grand jury charged Howard with counts of drug trafficking, drug possession, and possession of criminal tools. All of the counts sought forfeiture of the cell phones and money. Howard pleaded no contest to the charges and requested a trial on the forfeiture specifications. After finding Howard guilty of all counts, the court conducted a trial on the forfeiture specifications and found that the state proved by the greater weight of the evidence that the money and cell phones were used in the commission of the offenses.

{¶2} Howard's three assignments of error in this appeal collectively argue that the court erred by ordering the money forfeited because the state failed to provide adequate evidence to show that the money had been used in the commission of the offenses. He claims that he offered substantial evidence to show that he won the money at a casino shortly before being stopped by the police and that the marijuana found in the vehicle was for "personal" use. He maintains that the state did nothing more than offer the "opinion" of a police officer with the vice unit who believed that the seized money had been used in drug trafficking.

{¶3} The "[p]roceeds derived from or acquired through the commission of a criminal offense" are subject to forfeiture. R.C. 2981.02(A)(2). Forfeiture is a civil

penalty, *State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509, ¶ 29, and the version of R.C. 2981.04(B) in effect at the time of trial required the court to find by a preponderance of the evidence that the property is subject to forfeiture.[1] We review the order of forfeiture under the manifest weight of the evidence standard, *In re S.L.*, 8th Dist. Cuyahoga No. 93986, 2010-Ohio-1440, ¶ 10, and must affirm the order of forfeiture if it is supported by competent, credible evidence. *State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 516, ¶ 56 (applying "civil manifest-weight- of-the-evidence standard" to sexual predator classification).

{¶4} The court must consider three factors in deciding whether an alleged instrumentality was used in, or was intended to be used in, the commission or facilitation of an offense in a manner sufficient to warrant its forfeiture: (1) whether the offense could not have been committed or attempted but for the presence of the instrumentality; (2) whether the primary purpose in using the instrumentality was to commit or attempt to commit the offense; and (3) the extent to which the instrumentality furthered the commission of, or attempt to commit, the offense. R.C. 2981.04(B).

{¶5} The state relied on circumstantial evidence to prove that the items seized from Howard's car were used for drug trafficking. Circumstantial evidence "is defined as 'proof of facts or circumstances by direct evidence from which [the factfinder] may reasonably infer other related or connected facts that naturally and logically follow

---

[1] Effective April 1, 2017, R.C. 2981.04(B) was amended to provide that the state or political subdivision seeking forfeiture prove "by clear and convincing evidence that the property is in whole or part subject to forfeiture under section 2981.02 of the Revised Code[.]"

according to the common experience of people.'" *State v. Shabazz*, 146 Ohio St.3d 404, 2016-Ohio-1055, 57 N.E.3d 1119, ¶ 18, quoting *Ohio Jury Instructions*, CR Section 409.01(4) (Rev. Aug. 17, 2011).

{¶6} The state offered a number of facts from which the court could reasonably infer that the items seized from Howard were used in drug trafficking. For example, the vice officer testified that the sheer quantity and quality of the marijuana tended to dispel the notion that Howard possessed it for his own personal use. In addition, the money seized from Howard contained 56 one hundred dollar bills. The vice officer testified that "[w]ith the bigger higher [sic] quantity of drugs like that, you are using bigger bills." The number of cell phones found in the vehicle was consistent with the officer's experience that "dealers will have multiple cell phones. That's their lifeline to that business." The vice officer explained that multiple cell phones allowed drug dealers to have separate phone lines for family, buyers, and sellers. Finally, although the vice officer testified the powder had a nontrafficking use ("it's in the B 11 vitamin complex type"), he told the court that "it's a cut agent for cocaine and heroine [sic]"; meaning that dealers would use it to degrade high-grade cocaine or heroin in order to increase the amount they sell, thus increasing their profits. While no cocaine or heroin was recovered from Howard, the Mannitol's presence in the vehicle could be viewed as more than an innocent coincidence and indicative of drug trafficking.

{¶7} Howard testified that he bought the marijuana for his personal use with $7,500 he won gambling at the casino earlier that day. He denied ownership of the cell

phones.   He claimed that he did not use his player's card at the casino (which could track his winnings) when he won the money because "when you use your player's card, they keep tabs on you. You know, they keep tabs.   They know you checked in or stuff like that.   I don't always use the player's card."   Howard also testified that after he won the money at the casino, he returned home to rest.   When he left his home, he did not store the money for safekeeping, but instead carried it with him in his front pocket as he went about his daily activities.

{¶8} In verbal remarks made on the record, the court rejected Howard's testimony. The court noted evidence showing that Howard had gambled at the same casino on multiple occasions in the days before his arrest and did use his player's card.   The court found it "somewhat suspicious and does not support his position that the one day he purportedly won $7,500 he didn't use a player's card."   The court also thought it "bizarre" that the day after allegedly winning the money at the casino, Howard walked around with the wad of money in his pocket.   It noted that the wad of money created a bulge that "would have been clearly visible to people, and it's just hard to imagine that people go to the casinos in the middle of the night, win $7,500, go around paying bills and at 5:00 at night you still have this money stuffed in their front pockets."   Finally, the court acknowledged that Howard denied ownership of the cell phones, but found that denial immaterial.   It said it cared not about "ownership" of the cell phones, but whether the cell phones were instrumentalities that had been used in drug trafficking.   It found that they could be instrumentalities of drug trafficking because four cell phones in one

vehicle was unusual. These were justifiable conclusions based on the evidence, such that the court did not "'lose its way'" by finding that the money and cell phones were used or were intended to be used in the commission of a drug trafficking offense. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶9} Howard argues that the vice officer gave no basis for his opinion that Howard was a drug dealer apart from the quantity of cash and marijuana found in the car. This argument ignores that the vice officer testified to having been a police officer for 19 years and started in the narcotics unit more than 10 years ago. The vice officer testified that he received training in drug trafficking and interdiction, and that his practical experience included learning "how drug dealers really operate and the lingo that they used." While it is true that the officer acknowledged that Howard was not in possession of baggies, scales, or other drug-trafficking supplies, the officer's testimony regarding his experience with drug traffickers, coupled with the quantity of money, the number of cell phones, and the quantity of marijuana found in Howard's car was enough for the trial court to find a basis for forfeiture. The court specifically noted that its standard was a mere preponderance of the evidence and concluded that the items taken together "looks like drug trafficking." The court found "lots of surrounding evidence of current drug use and drug trafficking that day. That seems do [sic] dovetail into the lack of evidence that the money was won at a casino." The court did not lose its way by so concluding. The assigned errors are overruled.

**{¶10}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MELODY J. STEWART, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
EILEEN T. GALLAGHER, J., CONCUR