[Cite as *State v. Hodgkin*, 2019-Ohio-1686.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO. C-170689
                                                   TRIAL NO. C-17CRB-14828
    Plaintiff-Appellee,              :

 vs.                                    :          *O P I N I O N.*

JOHN R. HODGKIN,                        :

    Defendant-Appellant.             :


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed and Cause Remanded

Date of Judgment Entry on Appeal:  May 3, 2019


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Rubenstein & Thurman, L.P.A.,* and *Scott A. Rubenstein,* for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1}   Following a bench trial, defendant-appellant John R. Hodgkin was found guilty of sexual imposition, in violation of R.C. 2907.06(A)(1), and unlawful restraint, in violation of R.C. 2905.03(A), both third-degree misdemeanors.  Prior to sentencing, Hodgkin challenged the constitutionality of the R.C. Chapter 2950 sex-offender-registration statutes as applied to him.  The trial court rejected his constitutional challenges, sentenced him, and classified him as a Tier I sex offender under Ohio's version of the Adam Walsh Act, requiring him to register annually for 15 years.  Hodgkin has appealed.  We affirm Hodgkin's convictions and his Tier I classification, but we remand this cause for the trial court to properly notify Hodgkin of his sex-offender registration and verification duties.

{¶2}   Hodgkin raises three assignments of error for our review, which we will address in reverse order.  Hodgkin's third assignment of error alleges that his convictions were based on insufficient evidence and against the manifest weight of the evidence.

{¶3}   When reviewing Hodgkin's claim that his convictions were based on insufficient evidence, we must review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found that all the elements of the crimes had been proven beyond a reasonable doubt.  *See State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  In reviewing his claims that his convictions were against the manifest weight of the evidence, we weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses, to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed.  *Id.* at 387; *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  Issues concerning the weight to be given the evidence and the credibility of the witnesses

are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Jeffries*, 2018-Ohio-2160, 112 N.E.3d 417, ¶ 64 (1st Dist.).

{¶4} Hodgkin was convicted of sexual imposition, in violation of R.C. 2907.06(A)(1). R.C. 2907.06(A)(1) provides

> No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> > (1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.

" 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

{¶5} Hodgkin was also convicted of unlawful restraint, in violation of R.C. 2905.03(A), which states, "No person, without privilege to do so, shall knowingly restrain another of the other person's liberty."

{¶6} The evidence presented at trial showed that Hodgkin was a Metro bus driver. On March 13, 2017, the 17-year-old victim boarded Hodgkin's bus to get to her job. The victim and her friends previously had ridden with Hodgkin and had "play fought" with him. The victim testified that she called her cousin because Hodgkin was making her uncomfortable by looking at her in the rear-view mirror. Eventually, all of the other passengers got off of the bus, and the victim was left alone on the bus with Hodgkin.

3

{¶7}   Hodgkin pulled the bus over so that he could take a cigarette break. The victim testified that she told him she was going to be late for work, but Hodgkin said that they were early.  After he finished his cigarette, Hodgkin asked the victim, "You don't want to play today?"  The victim answered, "No."  Hodgkin then began to tickle the victim.  Initially, the victim was flat on her back, but she then "ended up on the floor on the other side of the bench of the seats."  Hodgkin continued to tickle the victim.  He touched her stomach, neck, chest and inner thighs.  He got on top of the victim and would not let her up, even after the victim told him to stop and get off of her.  Hodgkin slapped the victim's buttocks.  He did not get up off of the victim until she told him he was "the man."  Hodgkin then drove the victim to her stop, but he would not open the bus door until the victim gave him her name and number.  The victim gave Hodgkin a fake name and number, and he opened the bus door.  The victim told her boss and then a teacher what had happened.  A Metro bus camera recorded the incident.

{¶8}   While Hodgkin does not make any specific argument regarding his unlawful-restraint conviction, we hold that there is sufficient evidence in the record to support it.  Hodgkin got on top of the victim and refused to let her up, even when she told him to get off of her.  He also refused to open the bus door so that the victim could leave the bus.  We hold that the trial court did not lose its way in convicting Hodgkin of unlawful restraint.

{¶9}   Regarding his sexual-imposition conviction, Hodgkin contends that the sexual-contact element of sexual imposition was not supported by sufficient evidence.  He concedes that he touched the victim on her buttocks, chest, and inner thigh, erogenous zones listed in the R.C. 2907.01(B) definition of sexual contact.  But Hodgkin argues that the evidence was insufficient to support an inference that the purpose of his actions was sexual gratification or arousal.  Hodgkin argues that the

evidence supports an inference that all he wanted to do was "play fight" with the victim, and that his actions were no more than an innocent attempt at "horseplay."

{¶10} In *State v. Mack*, 1st Dist. Hamilton No. C-050968, 2006-Ohio-6284, ¶ 9, this court stated,

> The Ohio Revised Code does not define sexual arousal or gratification. But the statutes contemplate any touching of the specified areas that a reasonable person would perceive as sexually stimulating or gratifying. Whether a touching is for the purpose of sexual gratification or arousal is "a question of fact to be inferred from the type, nature, and circumstances surrounding the contact." While touching by itself is not sufficient for a conviction, the act of touching may constitute strong evidence of intent.

(Internal citations omitted.)

{¶11} The Ninth Appellate District discussed the factfinder's role in determining whether the touching was for the purpose of sexual gratification or arousal in *State v. Cobb*, 81 Ohio App.3d 179, 610 N.E.2d 1009 (9th Dist.1991), stating,

> Thus, the proper method is to permit the trier of fact to infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with those areas of the body described in R.C. 2907.01. In making its decision the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant. From these facts, the trier of facts may infer what the defendant's motivation was in making the physical contact with the victim. If the trier of fact determines[] that the defendant was motivated by desires of sexual arousal or

gratification, and that the contact occurred, then the trier of fact may

conclude that the object of the defendant's motivation was achieved.

*Cobb* at 185; *see In re Anderson*, 116 Ohio App.3d 441, 444, 688 N.E.2d 545 (12th

Dist.1996).

{¶12}  In this case, Hodgkin was looking at the 17-year-old victim in the rear-view mirror in a way that made her uncomfortable.  He touched the victim on her chest and inner thigh while "tickling" her.  He also slapped her on the buttocks.  Hodgkin got on top of the victim and refused to get off of her until she called him "the man."  He then refused to allow her to leave the bus until she had given him her "name and number."  The evidence belies Hodgkin's contention that he was merely engaging in "horseplay" with the victim.

{¶13}  We hold that the evidence supported the inference that Hodgkin had touched the victim for the purpose of sexual gratification or arousal.  A rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found that the state had proved all the elements of sexual imposition beyond a reasonable doubt.  Further, after reviewing all the evidence, we cannot say that the trial court clearly lost its way and created such a manifest miscarriage of justice that we must reverse Hodgkin's conviction for sexual imposition and order a new trial.  The third assignment of error is overruled.

{¶14}  Hodgkin's second assignment of error assets that R.C. Chapter 2950's sex-offender-registration statutes are unconstitutional as applied to him because requiring him to register as a Tier I sex offender constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article I, Section 9, of the Ohio Constitution.  Hodgkin contends that his mandatory classification as a Tier I sex offender, which requires him to register for 15 years and to annually verify his address, is grossly disproportionate to the nature of

the sexual-imposition offense and his character, which has the effect of shocking the community's sense of justice and, therefore, constitutes cruel and unusual punishment. He argues that the relative seriousness of the offense, a third-degree misdemeanor, and his lack of prior sex offenses render the burden of Tier I registration and verification requirements so disproportionate as to shock the sense of justice in the community or to shock a reasonable person.

{¶15} In *State v. Bradley*, 1st Dist. Hamilton No. C-100833, 2011-Ohio-6266, this court held that the imposition of Tier II registration requirements for a conviction of unlawful sexual conduct with a minor did not constitute cruel and unusual punishment. We stated,

> In determining whether a punishment is "cruel and unusual," reviewing courts must give substantial deference to the "broad authority" that the legislature has to determine the "types and limits of punishments for crimes." Generally, punishments that fall within the terms of a valid statute are not cruel and unusual. The question is whether, after deferring to the legislature's authority to define offenses and set the punishment for them, and after giving the legislature's determination the presumption of constitutionality to which it is entitled, the reviewing court can say that the penalty that the legislature has deemed appropriate is so disproportionate to the crime as to shock any reasonable person and the community's sense of justice.

(Internal citations omitted.) *Bradley* at ¶ 10.

{¶16} *Bradley* was cited by the Ohio Supreme Court in *State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 516. In *Blankenship*, the Supreme Court held, in a plurality opinion, that the imposition of Tier II sex-offender

registration requirements for fourth-degree-felony unlawful sexual conduct with a minor was not so extreme as to be grossly disproportionate to the crime or shocking to a reasonable person, and therefore, did not constitute cruel and unusual punishment.

{¶17} The *Blankenship* court stated that "reviewing courts should grant substantial deference to the broad authority that legislatures possess in determining the types and limits of punishments for crimes." *Id.* at ¶ 36, quoting *State v. Weitbrecht*, 86 Ohio St.3d 368, 373, 715 N.E.2d 167 (1999). Further, the court noted that "[t]he General Assembly has seen fit to impose registration sanctions in cases involving sex offenses to protect the public," and that the wisdom of such legislation was for the legislature to decide. *Blankenship* at ¶ 36 and 37.

{¶18} In determining the as-applied constitutionality of a penal statute, the court must consider the following: "(1) the culpability of the offender in light of his crime and characteristics; (2) the severity of the punishment; and (3) the penological justification." *Blankenship* at ¶ 22, citing *Graham v. Florida*, 560 U.S. 48, 67, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).

{¶19} In regards to Hodgkin's culpability, as the *Blankenship* court recognized that "the legislature has chosen to draw the line" by acknowledging the special culpability of adults who commit certain sexually-oriented offenses, including sexual imposition, and that these offenders are "deemed more culpable and deserving of punishment." *Blankenship* at ¶ 24. Hodgkin's victim was a 17-year-old girl that he held down and continued to touch, even when she told him to stop. We conclude, based on the record, that Hodgkin was more culpable and deserving of punishment. *See id.* at ¶ 24.

{¶20} Regarding the severity of Hodgkin's registration requirements, as a Tier I sex offender he was required to register for 15 years and to annually verify his

address. This registration period is less severe than the 25-year registration requirement approved by the Supreme Court in *Blankenship.* "Since the Court in *Blankenship* determined that a registration period that is nearly twice as long as the one imposed here is permissible under the Eighth Amendment, we can discern no reason to conclude that [Hodgkin's] 15-year registration period is so severe as to reach the level of unconstitutionality." *State v. Conley*, 9th Dist. Summit No. 27869, 2016-Ohio-5310, ¶ 13; *see State v. Heiney* 6th Dist. Lucas No. L-16-1042, 2018-Ohio-3408, ¶ 178.

{¶21} Finally, regarding the penological justification for Hodgkin's registration requirements, the *Blankenship* court noted that "the penological grounds for imposing such requirements are still accepted in many quarters and are justified in part based upon the perceived high rate of recidivism and resistance to treatment among sex offenders." *Blankenship* at ¶ 30. The imposition of a registration period satisfies "the penological aim of reducing recidivism among sex offenders." *Conley* at ¶ 14, citing *Blankenship*.

{¶22} Ohio courts have rejected cruel-and-unusual-as-applied challenges to R.C. Chapter 2950's tier-classification system. *See Heiney* (the imposition of Tier I registration and verification requirements for gross sexual imposition does not constitute cruel and unusual punishment); *Conley* (Tier I registration and verification requirements are not cruel and unusual punishment for third-degree-misdemeanor voyeurism); *State v. Fisher*, 4th Dist. Ross No. 16CA3553, 2017-Ohio-7260 (imposing Tier III registration and verification requirements for sexual battery does not constitute cruel and unusual punishment).

{¶23} We hold that the Tier I sex-offender registration and verification requirements imposed upon Hodgkin are not so extreme as to be grossly disproportionate to his sexual-imposition crime or shocking to a reasonable person

or to the community's sense of justice; therefore, they are not unconstitutional as applied to Hodgkin. The second assignment of error is overruled.

{¶24} For his first assignment of error, Hodgkin contends, and the state concedes, that the trial court failed to properly notify him of his registration and verification duties as a Tier I sex offender. The trial court did not orally notify Hodgkin of his registration requirements, and there is no notification form in the record. Therefore, this cause must be remanded so that the trial court may properly notify Hodgkin of his registration and verification requirements pursuant to R.C. 2950.03. The first assignment of error is sustained.

{¶25} The judgment of the trial court is affirmed. The cause is remanded for the trial court to properly notify Hodgkin of his registration and verification duties pursuant to R.C. 2950.03.

Judgment affirmed and cause remanded.

**MOCK, P.J.,** and **MYERS, J.,** concur.

Please note:
The court has recorded its own entry this date.