[Cite as *State v. Tucker*, 2026-Ohio-2066.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250271 |
| | | TRIAL NO. B-2404420 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| THADDEUS TUCKER, | : | *JUDGMENT ENTRY* |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/3/2026 per order of the court.**

**By:**_____
       **Administrative Judge**

[Cite as *State v. Tucker*, 2026-Ohio-2066.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                    :        APPEAL NO.   C-250271
                                           TRIAL NO.    B-2404420
    Plaintiff-Appellee,       :

  vs.                              :

THADDEUS TUCKER,                  :        *O P I N I O N*

    Defendant-Appellant.      :



Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 3, 2026


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bryan R. Perkins*, for Defendant-Appellant.

**Bock, Judge.**

{¶1}    In two assignments of error, defendant-appellant Thaddeus Tucker challenges the sufficiency and weight of the evidence supporting his conviction for gross sexual imposition. Tucker argues that the evidence proved that his contact with the victim's thigh and breast was incidental, part of their violent confrontation, and not for the purpose of achieving sexual gratification or arousal.

{¶2}    We hold that the circumstances of this case could allow a reasonable trier of fact to infer that Tucker touched the victim's erogenous zones for the purpose of achieving sexual gratification or arousal. Therefore, we overrule Tucker's assignments of error and affirm the trial court's judgment.

## I. Factual and Procedural History

{¶3}    The State charged Tucker with gross sexual imposition in violation of R.C 2907.05(A)(1).[1] Relevant here, the State alleged that Tucker "purposely had sexual contact with Y.P. and . . . purposely compelled Y.P. . . . to submit by force or threat of force."

{¶4}    At Tucker's trial, Y.P. testified that she spotted Tucker in his car late one night while walking home from a night out with her friends where she had consumed alcohol and marijuana. Y.P. explained that she knew Tucker and offered to pay him to drive her back to her apartment.

{¶5}    Y.P. recalled that, upon reaching her apartment's parking lot, Tucker parked his car, turned off the ignition, locked his doors, and grabbed her purse. She testified that, during the ensuing scuffle in Tucker's car, he "grabbed [her] shirt between [her] boobs" and struck her in the face. With Tucker holding onto Y.P., she

---

[1] The State also charged Tucker with robbery in violation of R.C. 2911.02(A)(2). The trial court found Tucker not guilty of that charge.

unlocked her door "to get out of [his car]." All the while, Tucker "was trying to take her purse and [] took [her] cellphone." When Y.P. was able to open her door, Tucker "put . . . his head between [her] legs and he bit [her] thigh." The State entered a photograph of the bitemark on the front of Y.P.'s left thigh into evidence. As Tucker continued striking her in the face and grasping her clothes, Y.P. fell out of his car and dragged Tucker out with her.

{¶6} The State interrupted Y.P. and instructed her to "back up for a second" and "focus on" when Tucker "was grabbing toward your titties." Y.P. denied having any flirtatious exchanges before the attack and "was fully dressed, fully covered, [with] nothing exposed." Next, the State asked Y.P., "[H]ow many times as you sat in the car did he grope your breasts?" Y.P. answered that Tucker "was holding onto them, so . . . the whole time." She testified that Tucker was holding her bra "right between my chest," her "bra snapped in half," which caused her shirt to tear at her shoulder where Tucker was "holding onto [her] and having [her] boobs." She opted to flee rather than fight Tucker because he was grasping "my titties, my shirt, he just got me, complete control over me." The trial court interjected to ask Y.P. if Tucker had groped her, and she answered, "Yeah."

{¶7} According to Y.P., Tucker stood over her outside of the car "gashing [her] in [her] face." At that point, she held onto his shirt and asked him why he was attacking her when he had her purse and her phone was underneath his car. Y.P. recalled that, after Tucker tired and fell onto Y.P., she managed to get "on top of him and . . . hold[] him down." Y.P. began yelling for help and asked her neighbors to call 9-1-1 and her brother. She also testified that she told Tucker that "he is going down" and she "knows where he works and everything" as she was "yelling for help."

{¶8} The incident was captured on a security camera and that footage, while poor quality, was played at trial. During cross-examination, Y.P. admitted that the footage shows her on Tucker at one point, restraining and punching him. She "had his shirt," "got control of him," and was "punching" him. She also testified that Tucker struck her "hard" in the face "10 or 15 times."

{¶9} Y.P.'s family arrived, helped Y.P. recover her belongings, and then attacked Tucker. Y.P. left the scene and, fearing that Tucker would "beat [her and her children] up," removed her children from her apartment.

{¶10} Y.P. initially testified that she did not call the police that night because her "phone is complete [sic] dead." Later, she testified that her neighbors called the police, but she was unsure whether the police responded. At another point, she testified that she was too intoxicated to call the police. But she clarified that she "wasn't that drunk" and did not call the police because she lost her phone in the scuffle.

{¶11} Y.P. reported the incident to the police the "first thing in the morning." Later that day, she went to Tucker's workplace and asked the employees to call the police. At his work, she announced, "He's a rapist," "you all [sic] going down for this," that she was "fighting for [her life]," and that Tucker was "not getting away with it." Later, Y.P. denied telling Tucker that she planned to report Tucker to the police for raping her. Instead, she reported that Tucker touched her in an "abnormal" way. So, when she spoke to police she "told them about the groping and what he was doing to me other than him just assaulting me and bashing my face."

{¶12} Cincinnati Police Detective David Price testified that he responded to an alarm at Tucker's work, and his bodycam footage was played in court. Price recalled that Y.P. simultaneously claimed that her phone was missing and that she did call the police the night of the assault. Price agreed that Tucker denied assaulting Y.P. or

having sexual contact with her, but he explained to officers that they fought over Tucker's belongings and that Y.P. had a firearm on her that night.

{¶13} The trial court found Tucker guilty of gross sexual imposition. The trial court remarked that it struggled "figuring out what is going on inside that car." It emphasized Y.P.'s testimony that Tucker "was trying to grab her and attack her . . . and felt her breast." It found that Y.P. "was a believable witness" and her testimony was "uncontroverted." It did not think Y.P.'s intoxication affected her memory seeing that she "look[ed] this guy up" and confronted him at his job.

## II. Analysis

{¶14} On appeal, Tucker challenges the sufficiency and weight of the evidence in two assignments of error.

A. *The evidence was sufficient to prove sexual contact*

{¶15} In his first assignment of error, Tucker argues that the State offered insufficient evidence to support his conviction because the State failed to prove the sexual-contact element of gross sexual imposition.

{¶16} In a sufficiency-of-the-evidence review, we view the evidence in a light most favorable to the State and must determine whether a rational trier of fact could have found that the evidence proved every element of the offense beyond a reasonable doubt. *State v. Johnson*, 2008-Ohio-705, ¶ 15 (1st Dist.), quoting *State v. Waddy*, 63 Ohio St.3d 424, 430 (1992).

{¶17} To convict Tucker of gross sexual imposition under R.C. 2907.05(A)(1), the evidence must prove that Tucker used force to purposely compel "sexual contact" with Y.P. Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh[] . . . or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

6

Purpose, as it relates to criminal offenses, refers to a "specific intent" to either "cause a certain result" or "to engage in conduct of [a certain] nature" if "the gist of the offense is a prohibition against conduct of a certain nature." R.C. 2901.22(A).

**{¶18}** At issue is whether the State's evidence proved that Tucker touched Y.P.'s thigh and breast to cause "sexual arousal or gratification." *See State v. Dunlap*, 2011-Ohio-4111, ¶ 25. Contact with an erogenous zone, alone, will not prove an intent to arouse or gratify. *See State v. Mack,* 2006-Ohio-6284, ¶ 9 (1st Dist.); *see also State v. Alanani,* 2024-Ohio-5660, ¶ 17 (1st Dist.). Absent an admission, a factfinder may infer the defendant's intent from circumstantial evidence, including "'the type, nature, and circumstances surrounding the contact.'" *State v. Hodgkin,* 2019-Ohio-1686, ¶ 10 (1st Dist.), quoting *Mack* at ¶ 9. An intent to cause sexual arousal "may be inferred when there is no innocent, i.e., nonsexual, explanation for the offender's conduct." (Citations omitted.) *State v. Armstead*, 2021-Ohio-4000, ¶ 14 (1st Dist.).

**{¶19}** Tucker argues that Y.P.'s testimony and the surveillance footage demonstrate that Tucker's contact with Y.P.'s thigh and breast amounted to incidental contact during a violent scuffle.

**{¶20}** We disagree. Y.P. testified that Tucker turned off his car and locked the doors before he grabbed Y.P., her purse, and her bra. She described the contact as "inappropriate" and testified that Tucker attempted to "take advantage" of her in an intoxicated state. And Y.P. confirmed to the trial court that Tucker "groped" her. The word "grope" is commonly understood to mean "'to touch or fondle (a person or part of the body) clumsily or forcefully for one's sexual gratification.'" *Carroll v. Trump*, 660 F.Supp.3d 196, 205 (S.D.N.Y. 2023), quoting *Oxford English Dictionary*, https://www.oed.com/view/Entry/81745; *see Blatt v. Pambakian*, 2021 U.S. App.

LEXIS 29015, *2-3 (9th Cir. Sep. 24, 2021). This evidence is sufficient to prove that Tucker contacted Y.P.'s thigh and breast to cause sexual arousal or gratification.

**{¶21}** We overrule the first assignment of error.

B. *Tucker's conviction is not contrary to the weight of the evidence*

**{¶22}** Turning to his second assignment of error, Tucker challenges his conviction as against the manifest weight of the evidence. He contends that Y.P.'s testimony was self-serving, rife with inconsistencies, and lacked credibility. The trial court came to the opposite conclusion and found her testimony credible.

**{¶23}** The "'[w]eight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other."'" (Emphasis in *Thompkins*.) *State v. Benson*, 2019-Ohio-3255, ¶ 38 (1st Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* (6th Ed. 1990). In a manifest-weight review, "we weigh the evidence and all reasonable inferences, and consider the credibility of the witnesses, to determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed." *Hodgkin*, 2019-Ohio-1686, at ¶ 3 (1st Dist.).

**{¶24}** Given that the trier of fact is able to "see[] and hear[] the witnesses," we traditionally afford considerable deference to the trial court's credibility determination. *State v. Beauchamp*, 2022-Ohio-738, ¶ 13 (1st Dist.). But a manifest-weight review does not demand absolute deference; instead, it requires us to "consider the credibility of the witnesses" as part of our review of the record. *Hodgkin* at ¶ 3; *see Thompkins* at 387. And if we "disagree[] with the factfinder's resolution of the conflicting testimony" and find that the trial court lost its way and created a manifest

8

miscarriage of justice, we may reverse a conviction as against the weight of the evidence. *Thompkins* at 387.

{¶25} We are """"not required to accept the incredible as true.""" *State v. Rose*, 2024-Ohio-5689, ¶ 24 (1st Dist.), quoting *State v. Barnes*, 2017-Ohio-383, ¶ 1 (8th Dist.), quoting *State v. Clark*, 101 Ohio App.3d 389, 408 (8th Dist. 1995). Some factors that bear on the weight of the evidence include "(1) whether the evidence was uncontradicted, (2) whether a key witness was impeached, (3) what the evidence does not establish, (4) the certainty and reliability of the evidence, (5) witness impartiality or disinterest, and (6) if the evidence is "'vague, uncertain, conflicting, or fragmentary.""" *Id.*, quoting *Barnes* at ¶ 1, quoting *Clark* at 408.

{¶26} Tucker maintains that Y.P.'s testimony reflects an attempt to shield the father of her children from criminal liability for violating a protective order by being with Y.P. on the night in question. While she alluded to being with him in the bodycam footage and avoided identifying him by his full name at the hearing, the protective order is not in the record.

{¶27} Tucker also argues that Y.P.'s testimony proves that his contact with Y.P. was part of their scuffle. True, Y.P. testified, at points, that Tucker's attempt to take her belongings caused the scuffle. But at other points, her testimony suggested that she was attempting to fend off Tucker's inappropriate contact. And Tucker is correct that Y.P. gave inconsistent testimony about why she did not call the police and that parts of her account were contradicted by the security footage. The trial court took these conflicts into consideration when it found Tucker guilty of gross sexual imposition, pointing out the malleable nature of memory and the variables present in this case that can affect a person's memory. And "[w]hen two reasonable interpretations of the evidence exist, neither of which is implausible, an appellate

court will not substitute its judgment for that of the factfinder." *State v. Campbell*, 2026-Ohio-334, ¶ 48 (5th Dist.), citing *State v. Dyke*, 2002-Ohio-1152, ¶ 13 (7th Dist.).

**{¶28}** Therefore, we hold that Tucker's conviction is not contrary to the weight of the evidence. The second assignment of error is overruled.

### III.  Conclusion

**{¶29}** We overrule both assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**KINSLEY, P.J.,** and **ZAYAS, J.,** concur.