[Cite as *State v. Franklin*, 2019-Ohio-1513.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 29071 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRANDON L. FRANKLIN | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR-2017-04-1407 |

DECISION AND JOURNAL ENTRY

Dated: April 24, 2019

SCHAFER, Judge.

{¶1} Defendant-Appellant, Brandon L. Franklin, appeals the judgment of the Summit County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

{¶2} On March 25, 2017, while working as an Uber driver, Mr. Franklin picked up a woman, E.C., who was in need of a ride home from a bar at around 9:45 p.m. M.D., a friend of E.C.'s with whom she had been drinking throughout that day and evening, summoned the ride through his Uber account after he and others in their group made the determination that E.C. had too much to drink. E.C.'s friends assisted her into Mr. Franklin's vehicle because she was unable to walk on her own. Once she was in the vehicle, Mr. Franklin confirmed the correct address with E.C. He proceeded to drive her to her destination, while she fell asleep in the backseat. E.C. next recalls waking up in her bedroom, bent over her bed, while Mr. Franklin was anally penetrating her. E.C. reported this incident to police.

{¶3}   On May 3, 2017, the Summit County Grand Jury charged Mr. Franklin with one count of sexual battery in violation of R.C. 2907.03(A)(2), a felony of the third degree.  Mr. Franklin entered a plea of not guilty to the charge.  The matter proceeded to a jury trial commencing on April 18, 2018.

{¶4}   At trial, ten witnesses testified for the State, including E.C.'s sister and the three friends who had been with her when she left for the Uber ride with Mr. Franklin.  Mr. Franklin testified as the sole witness in his case.  Following deliberations, the jury returned a verdict finding Mr. Franklin guilty.  The trial court accepted the jury's verdict, found Mr. Franklin guilty, and imposed a sentence of fifty-four months imprisonment.  Additionally, the trial court found, by clear and convincing evidence, that Mr. Franklin engaged in acts which indicate that he is a Tier III sex offender and adjudicated Mr. Franklin as such.

{¶5}   Mr. Franklin has appealed, raising five assignments of error for our review.

II.

**Assignment of Error I**

**The conviction is contrary to law in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, [Section] 10 and [Section] 16 of the Ohio Constitution because the State failed to produce sufficient evidence of all essential elements.**

{¶6}   In his first assignment of error Mr. Franklin contends that there was insufficient evidence to support his conviction for sexual battery in violation R.C. 2907.03(A)(2).  Specifically, Mr. Franklin asserts that E.C. "never said she gave consent[,]" but "never said she did not consent."  He contends that E.C.'s "lack of memory is not proof" as to whether or not "something consensual happened[.]"  Mr. Franklin also claims that "[p]roof of substantial impairment of control of conduct would not prove impairment of ability to consent."

**{¶7}** A challenge to the sufficiency of a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the prosecution, we must decide whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶8}** R.C. 2907.03(A)(2) prohibits a person from "engag[ing] in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." The phrase "substantially impaired" is not defined for purposes of R.C. 2907.03(A)(2), however the Supreme Court of Ohio, upon review of a different issue, stated that substantial impairment "must be given the meaning generally understood in common usage. * * * [It] must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope[.]" (Alterations sic.) *State v. Daniels*, 9th Dist. Summit No. 25808, 2011-Ohio-6414, ¶ 6, quoting *State v. Zeh*, 31 Ohio St.3d 99, 103-104 (1987). Expert testimony is not required to establish substantial impairment, and the existence of a substantial impairment may be proven by the victim's testimony. *Daniels* at ¶ 6.

**{¶9}** Voluntary intoxication is recognized as "a mental or physical condition that could cause substantial impairment." *State v. Hansing*, 9th Dist. Lorain No. 16CA011053, 2019-Ohio-739, ¶ 14. The fact of alcohol consumption on its own, however, does not necessarily evidence a

"substantial impairment." *Id.* quoting *State v. Jenkins*, 2d Dist. Greene No. 2015-CA-6, 2015-Ohio-5167, ¶ 27, quoting *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, ¶ 23 (2d Dist.), citing *State v. Doss*, 8th Dist. Cuyahoga No. 88443, 2008-Ohio-449, ¶ 18. The offender must know or have reasonable cause to believe that the victim was impaired, rather than merely intoxicated. *Id.* quoting *Jenkins*, at ¶ 27.

{¶10} In the present matter, E.C. began drinking with friends, M.D. and C.W., early in the afternoon of March 25, 2017. The group made stops at several establishments throughout the day, and E.C. imbibed different types of alcoholic beverages at each location. Later that afternoon or early evening, A.C.—sister of E.C. and girlfriend of M.D.—got off work. A.C. and another friend, C.R., met up with E.C., M.D., and C.W. at what would be the group's penultimate stop for drinks: a bar called Johnny J's. By all accounts, E.C. had consumed a significant amount of alcohol at that point and was noticeably intoxicated even before the group made their way to their final stop for drinks at South Point Tavern.

{¶11} As Mr. Franklin points out in his brief, several witnesses who had observed E.C. that evening testified as to the degree of her intoxication. M.D. testified that he drove the group from Johnny J's to South Point Tavern. According to M.D., E.C. was able to communicate, but her "manner of communication would indicate that she was very, very drunk and not coherent." M.D. stated that E.C. "needed lots of help walking" and "definitely couldn't walk on her own." Having concluded that E.C. needed to go home, M.D. called for a ride using the Uber app on his phone. Because E.C. lived with her father at that time, M.D. called her father to confirm that he was home and to let him know that E.C. would be arriving home via Uber. M.D. testified that, once the Uber arrived, he assisted E.C. into the car and informed Mr. Franklin that E.C. would be his passenger and that she was very drunk.

{¶12} C.W. also testified as to E.C.'s demeanor throughout the afternoon and evening, and to her state of intoxication prior to her leaving the group for the Uber ride home with Mr. Franklin. C.W. testified that at South Point Tavern, E.C. was "[v]ery intoxicated" and "[M.D. and A.C.] basically had to help her out of the bar, into that Uber car." C.W. stated that E.C. was able to communicate "[a] little bit but it was very unclear."

{¶13} According to C.R., even while they were still at Johnny J's, E.C. was "not walking straight," "slurring her words," and definitely intoxicated. During the trip to South Point Tavern, C.R. described E.C. as "upbeat" and recalled E.C. "singing and dancing" in the car. At South Point Tavern, however, E.C. told C.R. that "she did not feel well, so [C.R.] took [E.C.] to the bathroom and she began to get very sick and began throwing up." C.R. described E.C. as being "very intoxicated" at South Point Tavern, "the most intoxicated that [she] had ever seen her[,]" and "to the point that she really was not in a state of mind and she was too impaired [to] really kind of make like conversation." C.R. testified that E.C. could not walk straight or stand without assistance and stated that it "would have been very likely that she would have fallen without help."

{¶14} A.C. testified that her sister got sick shortly after arriving at South Point Tavern, and recalled that she was present in the restroom while E.C. was throwing up. She testified that E.C. was "drunk, and she couldn't stand, and she was falling in her seat[.]" A.C. stated that when it came time to walk E.C. out of the bar and to the Uber, E.C. had to put her arms around A.C. and M.D. "because she couldn't physically stand up herself."

{¶15} E.C. testified that the last thing she remembers from that night was being at Johnny J's, and that she had no recollection of going to or being at South Point Tavern. According to E.C., she has no recollection of getting into the Uber, the ride home, or getting into

her house. She testified that the next thing she remembered was waking, bent over her bed, while someone was anally penetrating her. According to E.C., it took her a couple of seconds to realize what was going on before she got up and said, "Who are you?" and, along with some profanity, instructed the individual to get out. Because she was still so drunk, E.C. laid in her bed and passed out again. The next morning, E.C. began to piece together what had happened in her bedroom and eventually decided to go to the hospital where they performed a sexual assault exam. E.C. later decided to report the incident of sexual assault to police.

{¶16} Detective Benjamin Surblis of the City of Akron Police Department handled the investigation. He contacted Mr. Franklin who initially denied engaging in sexual conduct with E.C. Mr. Franklin later admitted to having vaginal sex with E.C., but not anal sex, and claimed the encounter was consensual. According to Det. Surblis, Mr. Franklin acknowledged that E.C. was drunk, that he had to shake her to wake her up when they arrived at her house, and that she was unsteady and asked for help to the house. However, Mr. Franklin told Det. Surblis that E.C. invited him into the house, asking him to come in and cuddle, and averred that he asked E.C. "Are you sure?" multiple times before they engaged in sexual conduct.

{¶17} Additionally, Mr. Franklin turned over to Det. Surblis a picture he had taken of E.C. naked in her bed. Mr. Franklin claimed that he took the picture after they had sex and at E.C.'s request. He also claimed that E.C. asked him not to include her face in the picture in case he wanted to share it on social media. However, E.C. testified that she was not aware that Mr. Franklin had taken a picture of her until Det. Surblis showed her this picture.

{¶18} There is no dispute that Mr. Franklin engaged in sexual conduct with E.C., who was not the spouse of Mr. Franklin. Nor is it reasonably disputed or challenged on appeal that E.C. was intoxicated to the point of substantial impairment when Mr. Franklin picked her up that

evening, or that Mr. Franklin was aware of E.C.'s impairment. At trial, Mr. Franklin maintained that he engaged in consensual sex with E.C. and, at times, denied he was aware of the degree of her intoxication. However, on appeal, Mr. Franklin does not challenge the sufficiency of the State's evidence as to these essential elements of sexual battery stated within the text of R.C. 2907.03(A)(2). Instead, he argues that R.C. 2907.03(A)(2) should be construed so as to require the State to prove an additional "implied element" of consent. The thrust of Mr. Franklin's argument seems to be that, regardless of substantial impairment to a person's ability to appraise the nature of, or control of, his or her own conduct, that person may still possesses the ability to consent. Otherwise stated, he argues that proof of E.C.'s substantial impairment does not equate to proof that E.C. was not capable of "giving or withholding consent" to engage in sexual conduct with him.

{¶19} In support of his argument Mr. Franklin relies on a Seventh District case: *State v. Eberth*, 7th Dist. Mahoning No. 07-MA-196, 2008-Ohio-6596. *Eberth*, which addressed whether sexual battery was a lesser included offense of rape under R.C. 2907.02(A)(1)(c), flatly fails to support Mr. Franklin's position. *Id.* In *Eberth* the court focused on the distinction between the substantial impairment elements in both the rape statute and the sexual battery statute; the rape statute requires proof that the victim's ability to *resist or consent* was substantially impaired, which necessarily establishes the element of sexual battery that requires proof of a victim's ability to *appraise the nature of or control her own conduct* was substantially impaired. *Id.* at ¶ 23 quoting *State v. Stricker*, 10th Dist. Franklin No. 03AP-746, 2004-Ohio-3557, ¶ 33. The converse is not necessarily true, however, because, unlike sexual battery, the offense of rape requires an additional element of proof that the "victim's substantial impairment is due to a mental or physical condition or because of advanced age." *Stricker* at ¶ 33.

Nevertheless, this distinction is irrelevant to the analysis of the issue presently before this Court. Mr. Franklin was charged with sexual battery, not rape, and "[s]exual battery does not require proof of this [additional] element." *State v. Felton*, 8th Dist. Cuyahoga No. 92295, 2010-Ohio-4105, ¶ 35.

**{¶20}** Mr. Franklin's consent argument is without basis in the context of R.C. 2907.03(A)(2). R.C. 2907.03 was enacted with the purpose to "forbid sexual conduct with a person other than the offender's spouse in a variety of situations where the offender takes unconscionable advantage of the victim[,]" including "sexual conduct when the victim's judgment is obviously impaired[.]" Legislative Service Commission 1973 comment to R.C. 2907.03. Consent, or the lack thereof, is simply not an essential element of the offense of sexual battery under R.C. 2907.03(A)(2), therefore the State was not required to produce evidence on the issue of consent. Consequently, we conclude that Mr. Franklin's argument is without merit.

**{¶21}** Mr. Franklin also asserts an alternative argument that "'consent' is at least an affirmative defense to sexual battery[.]" We decline to address Mr. Franklin's contention that consent is an affirmative defense, because a sufficiency of the evidence challenge is inapplicable when reviewing an affirmative defense. *State v. Chapman*, 9th Dist. Summit No. 28626, 2018-Ohio-1142, ¶ 16. "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." R.C. 2901.05(A). Proof supporting an affirmative defense "is distinct from, and does not detract from, proof of the essential elements of the crime." *Chapman*, at ¶ 16, *citing State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37 ("[T]he due process 'sufficient evidence' guarantee does not implicate affirmative defenses").

{¶22} We conclude that the evidence, viewed in a light most favorable to the State, was sufficient to permit the jury to find Mr. Franklin guilty of sexual battery in violation of R.C. 2907.03(A)(2). Mr. Franklin's first assignment of error is overruled.

### Assignment of Error II

**The conviction is contrary to manifest weight of the evidence and in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, [Section] 10 of the Ohio Constitution.**

{¶23} In his second assignment of error, Mr. Franklin contends that his conviction is against the manifest weight of the evidence. When considering whether a conviction is against the manifest weight of the evidence, this Court must consider the whole record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Courts are cautioned to only reverse a conviction on manifest weight grounds "in exceptional cases," *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340, where the evidence "weighs heavily against the conviction," *Thompkins*, 78 Ohio St.3d at 387.

{¶24} The Ohio Supreme Court has identified eight factors that may be considered when deciding whether a conviction is against the weight of the evidence:

> These include whether the evidence was uncontradicted, whether a witness was impeached, what was *not* proved, that the reviewing court is not required to accept the incredible as true, the certainty of the evidence, the reliability of the evidence, whether a witness' testimony is self-serving, and whether the evidence is vague, uncertain, conflicting, or fragmentary.

(Emphasis sic.)  *State v. Apanovitch*, 33 Ohio St.3d 19, 23-24 (1987).  Mr. Franklin purports to discuss several of these factors in his effort to highlight the lack of evidence and testimony on the issue of whether E.C. consented to sexual conduct with Mr. Franklin.

{¶25}  In his brief, Mr. Franklin asserts that E.C. "had no memory" and that his own "uncontested memory was ignored[,]" and argues:

> This manifest weight challenge does not arise in a vacuum.  Here all the State was required to do was to prove E.C. was drunk and had sex.  That is not the law of sexual battery as charged.

 Mr. Franklin relies on the same argument presented in his first assignment of error, focusing on the absence of evidence to show that E.C. *did not consent* to sexual conduct in light of Mr. Franklin's claim that E.C. consented.  We rejected this argument in the first assignment of error, concluding that consent is not an essential element of sexual battery.  Mr. Franklin did not articulate a separate argument to demonstrate how any evidence weighs against an essential element of sexual battery.  Because Mr. Franklin has not shown that this is the exceptional case where the trier of fact lost its way in convicting him, we reject his manifest weight argument. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 33.  Consequently, Mr. Franklin's second assignment of error is overruled.

### Assignment of Error III

**R.C. 2907.03(A)(2) violates Fourteenth Amendment to the United States Constitution and Article I, [Section] 2 and [Section] 10 of the Ohio Constitution, as applied here to sexual conduct between adults in the absence of any testimony or finding of lack of consent.**

{¶26}  In his third assignment of error, Mr. Franklin claims that R.C. 2907.03(A)(2) is unconstitutional as applied.  The statutes enacted by the General Assembly are entitled to a "strong presumption of constitutionality."  *State v. Romage,* 138 Ohio St.3d 390, 2014–Ohio–

783, ¶ 7. As a result, "if at all possible, statutes must be construed in conformity with the Ohio and United States Constitutions." *State v. Collier*, 62 Ohio St.3d 267, 269 (1991).

{¶27} "A statute may be challenged as unconstitutional on the basis that it is invalid on its face or as applied to a particular set of facts." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 17 (2007). "In an as-applied challenge, the challenger 'contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, [is] unconstitutional.'" (Alteration sic.) *Id*. quoting *Ada v. Guam Soc. of Obstetricians & Gynecologists*, 506 U.S. 1011, (1992) (Scalia, J., dissenting). When a party challenges a statute on the grounds that it is "unconstitutional as applied to a particular set of facts, the party making the challenge bears the burden of presenting clear and convincing evidence of a presently existing set of facts that make the statute[] unconstitutional and void when applied to those facts." *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 38.

{¶28} Mr. Franklin acknowledges that he did not raise this issue below and asserts that this Court should analyze the issue under the plain error standard. Plain error may only be invoked where the following three elements exist:

> First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights" * * * [and] affected the outcome of the trial.

*State v. Consilio*, 9th Dist. Summit No. 28409, 2017-Ohio-7913, ¶ 7, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). There is a discretionary aspect of Crim.R. 52(B), and reviewing courts should take notice of plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶29} In his brief, Mr. Franklin contends that R.C. 2907.03(A)(2) "cannot be applied to make private consensual sexual relations between two adults illegal." Further, Mr. Franklin again raises his consent argument, asserting that he "was found guilty by a fact finder that was never required to consider consent when the complaining party never said she did not consent." As we concluded in the first and second assignments of error, consent is not an element of the offense sexual battery in violation of R.C. 2907.03(A)(2). Moreover, the facts of this case do not align with Mr. Franklin's unconstitutional as applied argument.

{¶30} Mr. Franklin admittedly engaged in sexual conduct with E.C. However, Mr. Franklin has not pointed this Court to any evidence in the record of this case to support his contention that his sexual encounter with E.C. was consensual for *both* parties. Thus, his argument that the statute is unconstitutional as applied to two consenting adults is wholly inapplicable in this case—where only Mr. Franklin acknowledges consenting to the sexual conduct. Mr. Franklin has not met his burden to show a presently existing set of facts that could make R.C. 2907.03(A)(2) unconstitutional when applied to those facts. *See Harrold*, 2005-Ohio-5334 at ¶ 38. We conclude that Mr. Franklin has failed to articulate a plausible argument to demonstrate how R.C. 2907.03(A)(2) was applied unconstitutionally in this case, and has certainly not demonstrated plain error. Mr. Franklin's third assignment of error is overruled.

### Assignment of Error IV

**The trial court erred [by] sentencing [Mr. Franklin] disproportionately to other offenders and summarily classifying him as a Tier III sex offender. The Tier III sex offender classification applied here constitutes cruel and unusual punishment under the Eight and Fourteenth Amendments to the United States Constitution and Article I, [Section] 9 of the Ohio Constitution, as grossly disproportionate to the nature of the offense and character of the offender.**

{¶31} The wording of Mr. Franklin's fourth assignment of error suggests that his sentence and classification as a Tier III sex offender are unconstitutional as cruel and unusual punishment under the Eighth Amendment to the United States Constitution and Article 1, Section 9 of the Ohio Constitution. Mr. Franklin acknowledges that constitutional questions were not raised below and urges this Court to exercise its discretion to review his constitutional challenge for plain error[1].

{¶32} "'The failure to challenge the constitutionality of a statute in the trial court forfeits all but plain error on appeal, and the burden of demonstrating plain error is on the party asserting it.'" *State v. Detamore*, 9th Dist. Wayne No. 15AP0026, 2016-Ohio-4682, ¶ 19, quoting *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 2. As we recognized above, plain error may only be invoked where the following three elements exist:

> First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights" * * * [and] affected the outcome of the trial.

*Consilio*, 2017-Ohio-7913 at ¶ 7, quoting *Barnes*, 94 Ohio St.3d at 27. There is a discretionary aspect of Crim.R. 52(B), and reviewing courts should take notice of plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Long*, 53 Ohio St.2d at paragraph three of the syllabus.

{¶33} The Eighth Amendment to the United States Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Ohio Constitution, Article I, Section 9 contains this same language prohibiting cruel

---

[1] Additionally, Mr. Franklin makes a vague reference to the R.C. 2953.08 standard of review for appeals based on felony sentencing guidelines and further suggests that "these issues may be analyzed under ineffective assistance." Upon our review of the argument within, we are unable to determine how these standards of review relate to the assigned error.

and unusual punishment, and "provides protection independent of the protection provided by the Eighth Amendment." *State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, ¶ 31. "[T]he bulk of Eighth Amendment jurisprudence concerns not whether a particular punishment * * * is disproportionate to the crime. The central precept is that 'punishment for crime should be graduated and proportioned to [the] offense.'" *Blankenship* at ¶ 17, quoting *Weems v. United States*, 217 U.S. 349, 367 (1910). The Supreme Court of Ohio has "recognized that cases involving cruel and unusual punishments are rare, 'limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person.'" *Id*. at ¶ 32, quoting *McDougle v. Maxwell*, 1 Ohio St.2d 68, 70 (1964).

{¶34} Although he mentioned plain error in his brief, Mr. Franklin has not developed a plain error argument. *See* App.R. 16(A)(7); *see also M.H. v. J.P.*, 9th Dist. Lorain No. 15CA010832, 2017-Ohio-33, ¶ 10. Instead, Mr. Franklin briefly argues that his sentence of "[f]our and one-half years in prison and a lifetime registration and lifetime 90-day reporting for a first offender sentenced for one count of sexual battery which involved consensual sex between adults is not proportionate to any other *comparable* case discovered under R.C. 2907.02(A)(2)." Mr. Franklin suggests that the prison term, though less than the maximum, is disproportionate. He also contends that his classification as a sex offender is erroneous, claiming that "[t]his record stands as one that 'involves' consensual sex between adults[:]" a contention that is actually belied by the record itself.

{¶35} Within this assignment of error, Mr. Franklin also attempts to raise various other ill-defined issues unrelated to the assigned error. This Court has held that "[a]n appellant's captioned assignment of error 'provides this Court with a roadmap on appeal and directs this Court's analysis.'" *State v. Pleban*, 9th Dist. Lorain No. 10CA009789, 2011-Ohio-3254, ¶ 41,

quoting *State v. Marzolf*, 9th Dist. Summit No. 24459, 2009-Ohio-3001, ¶ 16.  This Court will not address arguments that fall outside the scope of Mr. Franklin's captioned assignment of error. *See Pleban* at ¶ 41.

**{¶36}**  We conclude that Mr. Franklin failed to articulate an argument to demonstrate plain error with respect to any issues raised in this assignment of error.  "We decline to create a plain error argument on [Mr. Franklin's] behalf and overrule his [fourth] assignment of error on that basis."  *State v. Boatright*, 9th Dist. Summit No. 28101, 2017-Ohio-5794, ¶ 8.

**<u>Assignment of Error V</u>**

**[Mr. Franklin] was denied the effective assistance of trial counsel.**

**{¶37}**  In his fifth assignment of error, Mr. Franklin argues ineffective assistance of trial counsel. To establish ineffective assistance of counsel, Mr. Franklin must satisfy a two-prong test demonstrating (1) that counsel's performance was deficient, in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that his defense was prejudiced by this deficient performance.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To demonstrate deficient performance, a defendant must show that the representation fell below an objective standard of reasonableness.  *Id.* at 687-688.  To show prejudice, a "defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."  *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.  However, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Strickland* at 689.  Further, this Court "need not address both prongs of the *Strickland* test should it find that [Mr. Franklin] failed to prove either."  *State v. Ray*, 9th Dist. Summit No. 22459, 2005-Ohio-4941, ¶ 10.

{¶38} Franklin contends that his trial counsel was ineffective for failing to raise or use the affirmative defense of consent, failing to question witnesses regarding consent, and failing to object to statements made by the State at closing argument regarding the absence of the issue of consent in the jury instructions and the definition of the offense of sexual battery. Each of these arguments rely on Mr. Franklin's contention that consent, or lack of consent, is an implied element or affirmative defense to sexual battery. As we stated in the first assignment of error, consent is not an element of R.C. 2907.03(A)(2). Furthermore, Mr. Franklin has not supported his claim that consent is an affirmative defense to the offense of sexual battery as charged. Regardless, with respect to each of these arguments Mr. Franklin has not endeavored to explain how the outcome of trial would have been different but for counsel's alleged errors and, therefore, has failed to show prejudice.

{¶39} Additionally, Mr. Franklin argues that his trial counsel's performance was deficient because he failed to request a "consent jury instruction" despite there being "enough evidence in the record to support a claim of consent." Mr. Franklin speculates that, given such an instruction, the jury "might have concluded that [Mr.] Franklin had acted with consent." We reiterate that consent is not an essential element of sexual battery under R.C. 2901.03(A)(2). Before a jury can find a defendant guilty of sexual battery under R.C. 2907.03(A)(2), they must find beyond a reasonable doubt that the defendant engaged in sexual conduct with another, who was not his spouse, and that the defendant knew that the other person's ability to appraise the nature of or control her own conduct was substantially impaired. *Ohio Jury Instructions*, CR Section 507.03 (Rev. Mar. 5, 2016). Mr. Franklin has not shown how a consent instruction would have even been appropriate in this case. Consequently, he has not shown that trial counsel's failure to request such an instruction amounts to deficient performance.

{¶40} Finally, Mr. Franklin argues that trial counsel's performance was deficient for failing to review a presentence investigation report. Mr. Franklin's argument is based on his flawed claim that the presentence investigation report was "damning in error[.]" According to Mr. Franklin, if trial counsel had reviewed the presentence investigation report, counsel could have challenged the conclusions in the report stating that Mr. Franklin "took advantage of an intoxicated female who **placed her trust in him to give her a ride home as part of his employment**" as an Uber driver, and challenged the statement that he had sex with a victim who was unable to provide consent to intercourse due to her state of intoxication. (Bold sic.) Mr. Franklin has not demonstrated the falsity or impropriety of these statements in the presentence investigation report, but again asserts the irrelevant issue of the absence of proof as to a lack of consent. Mr. Franklin has not met his burden to show any probability that, had trial counsel reviewed the report, the outcome of the trial would have been any different.

{¶41} Mr. Franklin has failed to demonstrate ineffective assistance of counsel and his fifth assignment of error is overruled.

### III.

{¶42} Each of Mr. Franklin's five assignments of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, P. J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

MARK H. LUDWIG, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.